UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL STARY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TELADOC HEALTH, INC., JASON NATHANIALL GOREVIC, and MALA MURTHY,<br><br>Defendants. | Case No.  7:24-cv-03849-KMK |
| ANDREW WAITS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TELADOC HEALTH, INC., JASON GOREVIC, and MALA MURTHY,<br><br>Defendants. | Case No.  7:24-cv-05339-UA |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ANDREW WAITS
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 3

ARGUMENT................................................................................................................... 7

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES.. 7

II.   WAITS SHOULD BE APPOINTED LEAD PLAINTIFF.................................................. 8

      A.    Waits Is Willing to Serve as Class Representative ................................................. 9

      B.    Waits Has the "Largest Financial Interest"............................................................. 9

      C.    Waits Otherwise Satisfies the Requirements of Rule 23 ..................................... 11

      D.    Waits Will Fairly and Adequately Represent the Interests of the Class and Is Not
            Subject to Unique Defenses ................................................................................... 14

III.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED.......... 14

CONCLUSION.............................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)............................................................................11

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) .............................................................................................8

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ..........................................................................................12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ............................................................................................7

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
2018 WL 3093965 (S.D.N.Y. June 21, 2018) ........................................................................10

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)..........................................................................13

*Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A,
1997 WL 118429 (M.D. Fla. Feb. 6, 1997) .............................................................................11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................................................13

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) .........................................................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................................................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)............................................................................10

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285, 291 (2d Cir. 1992)...........................................................................................12

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
2009 WL 2259502 (S.D.N.Y. July 29, 2009) .......................................................................7, 8

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147, 151 (D. Del. 2005) .......................................................................................14

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) .............................................................................10, 11

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
   2008 WL 2811358 (S.D.N.Y. July 7, 2008) .........................................................................12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................................11

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .............................................................................................7

*Janbay v. Canadian Solar, Inc.*,
   272 F.R.D. 113 (S.D.N.Y. 2010) ...........................................................................................12

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .............................................................................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   311 F.R.D. 373 (S.D.N.Y. 2015) ...........................................................................................14

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015) ...................................................................................10

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
   1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ...........................................................................10

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)....................................................................................................7

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
   2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017).......................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...........................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008).....................................................................................14

## <u>Statutes</u>

15 U.S.C. § 78u-4 .................................................................................................................1, 8, 11

Private Securities Litigation Reform Act of 1995 ................................................................ *passim*

Securities Exchange Act of 1934...........................................................................................*passim*

## <u>Rules</u>

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Fed. R. Civ. P. 42 ......................................................................................................................1, 2, 7

Andrew Waits ("Waits") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Waits as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons who purchased or otherwise acquired Teladoc Health, Inc. ("Teladoc" or the "Company") stock between November 2, 2022 and February 20, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The *Stary* Complaint and *Waits* Complaint allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. Teladoc investors, including Waits, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused Teladoc's stock price to fall sharply, damaging Waits and other Teladoc investors.

---

[1] On May 17, 2024, the first-filed of the Related Actions was filed in this Court, styled *Stary v. Teladoc Health, Inc. et al.*, No. 7:24-cv-03849 (the "*Stary* Action"), alleging a class period including all persons who purchased or otherwise acquired Teladoc stock between November 2, 2022 and February 20, 2024, inclusive. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A ("*Stary* Complaint") ¶ 1. On July 15, 2024, a second action alleging substantially the same wrongdoing as the *Stary* Action against the same defendants was filed in this Court, styled *Waits v. Teladoc Health, Inc. et al.*, No. 7:24-cv-05339 (the "*Waits* Action"), alleging a slightly smaller class period including all persons who purchased or otherwise acquired Teladoc stock between November 3, 2022 and February 20, 2024, inclusive. *See* Lieberman Decl., Ex. B ("*Waits* Complaint") ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the *Stary* Action.

1

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the Exchange Act by the same Defendants arising from substantially the same alleged fraud. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Waits purchased or otherwise acquired 210,500 shares of Teladoc stock, expended $4,843,496 on these transactions, retained 88,500 of his shares of Teladoc stock as of October 24, 2023, when the truth regarding Defendants' alleged fraud began to emerge (*see Waits* Complaint ¶¶ 8-9, 37-39), and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $310,032 in connection with his Class Period transactions in Teladoc stock. *See* Lieberman Decl., Ex. C. Accordingly, Waits believes that he has the largest financial interest in the relief sought in this litigation. Beyond his considerable financial interest, Waits also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Waits has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

2

Accordingly, Waits respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Waits as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, Teladoc provides direct-to-consumer, online health services. *Stary* Complaint ¶ 2; *Waits* Complaint ¶ 2. One of Teladoc's services is "BetterHelp," an online mental health counseling platform. *Stary* Complaint ¶ 2; *Waits* Complaint ¶ 2. Teladoc also provides online primary care and chronic disease management services. *Stary* Complaint ¶ 2; *Waits* Complaint ¶ 2.

BetterHelp is the nation's largest provider of direct-to-consumer online mental health counseling, with 415,000 paying users in the first quarter of 2024 ("Q1-2024"). *Waits* Complaint ¶ 3; *see also Stary* Complaint ¶ 25.

BetterHelp is Teladoc's largest division and contributes the Company's greatest revenue share, contributing about 42% of overall revenue. *Stary* Complaint ¶ 4; *Waits* Complaint ¶ 4.

On November 30, 2022, Teladoc's Chief Financial Officer, Defendant Mala Murthy ("Murthy"), presented at the Piper Sandler Annual Healthcare Conference. *Stary* Complaint ¶ 5; *Waits* Complaint ¶ 5. There she discussed projections for BetterHelp's projected memberships and advertising spend for the coming year. *Stary* Complaint ¶ 5; *Waits* Complaint ¶ 5. She stated that, despite increased advertising spending for BetterHelp over the past few years, "we have talked about the ad spending about BetterHelp business moderating in 4Q, right?" *Stary* Complaint ¶ 5; *Waits* Complaint ¶ 5. She further described "a sequential pullback in ad spending." *Stary* Complaint ¶ 5; *Waits* Complaint ¶ 5.

Defendant Murthy also explained:

3

I will also say just because we are pulling back spend does not mean that we are not spending at all, right? Like it's not that we are going dark, far from that. So we continue to have spending in the BetterHelp business, and we are essentially looking to the ad prices and deciding where we want to be.

*Stary* Complaint ¶ 6; *Waits* Complaint ¶ 6.

Later in the same conference, Teladoc's Chief Executive Officer, Defendant Jason Gorevic ("Gorevic"), described "doing more in larger media sort of mass media outlets. And some of that's just in response to the fact that the price of advertising in those mass media channels has come down." *Stary* Complaint ¶ 7; *Waits* Complaint ¶ 7.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. *See Stary* Complaint ¶¶ 26-35; *Waits* Complaint ¶¶ 28-32, 34-36. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company continued to expand its marketing spend throughout 2023, despite public assurances that it would pull back its advertising spending; (ii) increased marketing spend on BetterHelp deteriorated the Company's revenue, with little return for that investment; (iii) despite the Company's acknowledgment that increased advertising spend would be marginally inefficient due to market saturation, it continued to grow its advertising spend in the BetterHelp business; and (iv) despite public statements that there remained "a long runway" for BetterHelp membership growth, BetterHelp's membership stagnated and then decreased in 2023, due to market saturation, largely due to BetterHelp's own marketing. *Stary* Complaint ¶ 35; *Waits* Complaint ¶ 36.

On October 24, 2023, during after-market hours, Teladoc issued a press release announcing its third quarter 2023 ("Q3-2023") results (the "Q3-2023 Earnings Release"). *Waits* Complaint ¶¶ 8, 37. The Q3-2023 Earnings Release reported, *inter alia*, revenue of $660.24 million for the quarter, missing consensus estimates by $2.82 million. *Id.* The Q3-2023

4

Earnings Release also provided fourth quarter 2023 ("Q4-2023") revenue guidance in a range of $658 million to $683 million, below consensus estimates of $686.56 million, as well as revised full year 2023 revenue guidance in a range of $2.6 billion to $2.625 billion, down from a prior forecast of $2.6 billion to $2.675 billion and below the consensus estimate of $2.63 billion. *Id.* In addition, the Q3-2023 Earnings Release quoted Defendant Gorevic, who announced that the Company would undertake an operational review of its business. *Id.* Further, in a related investor presentation released the same day, Teladoc revealed that its BetterHelp segment revenue had declined from $292 million in the second quarter of 2023 ("Q2-2023") to $286 million in Q3-2023. *Id.* ¶¶ 8, 38. The same presentation also revealed that BetterHelp membership had declined from 476,000 paying users in Q2-2023 to 459,000 paying users in Q3-2023. *Id.*

Investors reacted negatively to these disclosures. *Id.* ¶¶ 9, 39. Teladoc's stock price fell $0.71 per share, or approximately 3.9%, from a closing price of $18.12 per share on October 24, 2023 to a closing price of $17.41 per share on October 25, 2023. *Id.*

On February 20, 2024, Teladoc announced its Q4-2023 earnings results and held its quarterly earnings call. *Id.* ¶ 10; *see also Stary* Complaint ¶ 8.

In its associated investor presentation, the Company revealed that BetterHelp revenue fell $1 million compared to the year prior, and fell about $10 million from Q3-2023 to Q4-2023. *Waits* Complaint ¶ 11; *see also Stary* Complaint ¶ 10.

The same presentation revealed that BetterHelp lost paying users for two consecutive quarters, decreasing from 476,000 paying users in Q2-2023 to 425,000 paying users in Q4-2023—despite increased advertising spend. *Waits* Complaint ¶ 12; *see also Stary* Complaint ¶ 11.

On the earnings call, Defendant Gorevic revealed that the Company's revenue was flat compared to the prior year and down 3% sequentially—well below expectations. *Stary* Complaint ¶ 12; *Waits* Complaint ¶ 13.

Defendant Gorevic blamed these trends on BetterHelp:

> Revenue and margins were below our expectations in the quarter as we saw lower yields on marketing spend. Specifically, we experienced returns on our social media advertising that were below target in the second half of the year, which was a departure relative to the first half. BetterHelp outlook assumes the lower yields experienced in certain channels in the second half of 2023 will persist, and, as a result, will impact our year-over-year growth rates in the first half of 2024.

*Stary* Complaint ¶ 13; *Waits* Complaint ¶ 14.

Analysts expressed surprise at this report. *Stary* Complaint ¶ 14; *Waits* Complaint ¶ 15. Gil Lunria of Davidson wrote the "business is proving difficult to grow with existing marketing dollars and strategies." *Stary* Complaint ¶ 14; *Waits* Complaint ¶ 15.

Investors reacted negatively to the news. *Stary* Complaint ¶ 15; *Waits* Complaint ¶ 16. Teladoc's stock price fell $4.85 per share, or approximately 23.6%, from a closing price of $20.49 per share on February 20, 2024 to a closing price of $15.64 per share on February 21, 2024. *Waits* Complaint ¶ 16; *see also Stary* Complaint ¶ 15.

Then, on February 23, 2024, Teladoc filed its annual report on Form 10-K with the U.S. Securities and Exchange Commission, reporting the Company's Q4-2023 results (the "2023 10-K"). *Waits* Complaint ¶ 17. The 2023 10-K reflected substantially increased advertising costs in 2023. *Id.*; *see also Stary* Complaint ¶ 9. In 2023, advertising and marketing spend was $688.854 million, up from $623.536 million in 2022—itself an increase from $416.726 million in 2021. *Waits* Complaint ¶ 17; *see also Stary* Complaint ¶ 9. According to the 2023 10-K, "[t]his increase was substantially driven by higher digital and media advertising costs related to BetterHelp." *Waits* Complaint ¶ 17; *see also Stary* Complaint ¶ 9.

6

ARGUMENT

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law ***or*** fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).  Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action is brought against the same Defendants in connection with violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the prices of

Teladoc's stock and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.    WAITS SHOULD BE APPOINTED LEAD PLAINTIFF

Waits should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice . . .;

8

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Waits satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

A.      Waits Is Willing to Serve as Class Representative

On May 17, 2024, counsel for plaintiff in the first-filed of the Related Actions caused the statutorily required Notice to be published via *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Teladoc and other defendants, and which advised investors in Teladoc stock that they had until July 16, 2024—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Lieberman Decl., Ex. D.

Waits has filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. E.  Accordingly, Waits satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      Waits Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Waits has the largest financial interest of any Teladoc investor or investor group seeking to serve as

Lead Plaintiff. For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and routinely applied by courts in this District. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004). Of the *Lax* factors, courts in this District tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See Nurlybaev*, 2017 WL 5256769, at *1; *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 530 (S.D.N.Y. 2015).

During the Class Period, Waits: (1) purchased or otherwise acquired 210,500 shares of Teladoc stock; (2) expended $4,843,496 on his transactions in Teladoc stock; (3) retained 88,500 of his shares of Teladoc stock as of October 24, 2023, when the truth regarding Defendants' alleged fraud began to emerge (*see Waits* Complaint ¶¶ 8-9, 37-39); and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $310,032 in connection with his Class Period transactions in Teladoc securities. *See* Lieberman Decl., Ex. C. To the extent that Waits possesses the largest financial interest in the outcome of this litigation, he

---

[2] *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

is the presumptive "most adequate" plaintiff (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), given that he also satisfies the requirements of Rule 23.

        C.      Waits Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *Olsten*, 3 F. Supp. 2d at 296. Moreover, the *Stary* Complaint and *Waits* Complaint

sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Waits.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Waits's claims are typical of those of the Class. Waits alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Teladoc, or by omitting to state material facts necessary to make the statements they did make not misleading. Waits, like other Class members, purchased or otherwise acquired Teladoc stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosures of those misrepresentations and/or omissions that drove Teladoc's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Waits has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions, such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Waits is also represented by the Bronstein, Gewirtz & Grossman, LLC law firm in this litigation.  There is no evidence of antagonism or conflict between Waits's interests and those of the Class.  Moreover, Waits has submitted a sworn Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. E), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Waits has submitted a sworn Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class.  *See id.*, Ex. F.

13

D.    Waits Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Waits as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Waits's ability and desire to fairly and adequately represent the Class has been discussed above.  Waits is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Waits should be appointed Lead Plaintiff for the Class.

III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class."  *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Waits has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as

14

detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. G. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in these Related Actions, Waits's counsel, Pomerantz, has the skill, knowledge, expertise, and experience that will enable the firm to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Waits's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Waits respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Waits as Lead Plaintiff for the Class; and (3) approving Waits's selection of Pomerantz as Lead Counsel for the Class.

15

Dated:  July 16, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Andrew Waits and Proposed Lead
Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Andrew Waits*

16