# EXHIBIT A

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL STARY, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> TELADOC HEALTH, INC., JASON NATHANIALL GOREVIC, and MALA MURTHY, <br><br> Defendants. | Case No.: 1:24-cv-3849 <br><br> **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** <br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Paul Stary ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of documents filed by Teladoc Health, Inc. ("Teladoc" or the "Company") with the United States Securities and Exchange Commission ("SEC"), wire and press releases, analyst reports and news articles, information readily obtainable on the Internet, and other available material and data.

Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities action on behalf of all persons who purchased or otherwise acquired Teladoc stock between November 2, 2022 and February 20, 2024, inclusive (the "Class Period"), against Teladoc and certain of its officers and/or directors for violations of

1

the Securities Act of 1934 (the "1934 Act").  As set forth below, Defendants violated Section 10(b) of the 1934 Act by making false or misleading statements about its profitability and plans to attain profitability.

2.     Teladoc provides direct-to-consumer, online health services.  One of Teladoc's services is "BetterHelp," an online mental health counseling platform.  Teladoc also provides online primary care and chronic disease management services.

3.     BetterHelp is the nation's largest provider of direct-to-consumer online mental health counseling, with 415,000 paying users in Q1-2014.

4.     BetterHelp is Teladoc's largest division and contributes the Company's greatest revenue share, contributing about 42% of overall revenue.

5.     On November 30, 2022, Teladoc's Chief Financial Officer, Mala Murthy ("Murthy"), presented at the Piper Sandler Annual Healthcare Conference.  There she discussed projections for BetterHelp's projected memberships and advertising spend for the coming year. She said despite increased advertising spending for BetterHelp over the past few years, "we have talked about the ad spending about BetterHelp business moderating in 4Q, right?"  She further described "a sequential pullback in ad spending."

6.     Murthy also explained:

I will also say just because we are pulling back spend does not mean that we are not spending at all, right?  Like it's not that we are going dar, far from that.  So we continue to have spending in the BetterHelp business, and we are essentially looking to the ad prices and deciding where we want to be.

7.     Later in the same conference, Teladoc's Chief Executive Officer, Jason Nathaniall Gorevic ("Gorevic"), described "doing more in larger media sort of mass media outlets.  And some of that's just in response to the fact that the price of advertising in those mass media channels has come down."

8.      On February 20, 2024, Teladoc released its Q4-2024 earnings report on Form 10-K and held its quarterly earnings call.

9.      The Company's Form 10-K demonstrated substantially increased advertising costs.  In 2023, advertising and marketing spend was $668,854,000, up from $623,536,000 in 2022 – itself an increase from $416,726,000 in 2021.   According to the Form 10-K, "[t]his increase was substantially driven by higher digital and media advertising costs related to BetterHelp."

10.      In its associated investor presentation, the Company revealed BetterHelp revenue fell $1 million compared to the year prior, and fell about $10 million from 3Q-2023 to 4Q-2023.

11.      The same presentation revealed BetterHelp lost members for two consecutive quarters, despite that increased advertising spend, decreasing from 476,000 members in 2Q-2023 to 425,000 members in 4Q-2023 – despite the increased advertising spend.

12.      On the earnings call, Gorevic revealed the Company's revenue was flat compared to the prior year and down 3% sequentially – well below expectations.

13.      Gorevic blamed these trends on BetterHelp:

Revenue and margins were below our expectations in the quarter as we saw lower yields on marketing spend.  Specifically, we experienced returns on our social media advertising that were below target in the second half of the year, which was a departure relative to the first half.  BetterHelp outlook assumes the lower yields experienced in certain channels in the second half of 2023 will persist, and, as a result, will impact our year-over-year growth rates in the first half of 2024.

14.      Analysts expressed surprise at this report. Gil Lunria of Davidson wrote the "business is proving difficult to grow with existing marketing dollars and strategies."

15.      Investors reacted negatively to the news. Shares fell $4.85 (23.6%) overnight, from $20.49/share to $15.64/share.

3

**JURISDICTION AND VENUE**

16. Jurisdiction is conferred by Section 27 of the 1934 Act, 15 U.S.C. §78aa. The claims asserted herein arise under Sections 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. §240.10b-5.

17. Venue is proper in this District pursuant to Section 27 of the 1934 Act. The violations of law complained of herein occurred in part in this District, including the dissemination of materially false and misleading statements herein into this District.

18. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

19. Plaintiff Paul Stary purchased Teladoc stock as described in the Certification filed herewith and incorporated by reference. Plaintiff suffered damages in connection with such purchase of Teladoc stock.

20. Defendant Teladoc Health, Inc. is incorporated in Delaware. Its headquarters is 2 Manhattanville Dr., Suite 203, Purchase, NY 10577. Shares of the Company's stock trade on the New York Stock Exchange under the symbol "TDOC."

21. Defendant Jason Nathaniall Gorevic is, and at all material times was, the Company's Chief Executive Officer.

22. Defendant Mala Murthy is, and at all material times was, the Company's Chief Financial Officer.

4

23.     Defendants Gorevic and Murthy (the "Individual Defendant"), because of their positions with the Company, possessed the power and authority to control the contents of Teladoc's quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and investors, *i.e.*, the market.   They were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions within the Company and their access to material information available to them but not the public, the Individual Defendants knew that adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements pleaded herein.

### FALSE AND MISLEADING CLAIMS

24.     Teladoc provides online, direct-to-consumer health service services.  One such service is BetterHelp, an online mental health counseling service.

25.     BetterHelp is the nation's largest online counseling service, with about 415,000 members as of Q1-2024.

26.     The Company's quarterly earnings report, released November 2, 2022, showed $178.92 million spent on advertising and marketing in the quarter.  This was a 61% increase from $111.08 million spent on advertising and marketing in the same quarter in 2011.  The report states this increase was "substantially driven by higher digital and media advertising costs related to BetterHelp."

27.     On November 20, 2022, Murthy presented at the Piper Sandler Annual Healthcare Conference.

28.     At the Conference, Murthy discussed BetterHelp's advertising spending:

I think about how we are run rating and exiting, I'll say a couple of things.  One is, we have talked about the ad spending primarily around the BetterHelp business, moderating in 4Q, right? We've talked about that extensively.

And as a reminder, it's essentially going back to the way life was for BetterHelp pre-Covid, right?  The ad spending dynamics in – as we approach the holiday season are certainly more expensive and challenging and this is a business where we do a lot of optimization around both within different advertising channels and across the different advertising channels.

So it makes sense for us to essentially pull back when we find the ROIs for the ad spend to be suboptimal.  And so what we've talked about is to expect A&M to sequentially decline in 4Q very similar to what it used to be.  I would say the last 2 years have essentially been an anomaly away from a normal seasonal pattern.

29.     Murthy also said, "[i]f you think about how we do our ad spending in that, we can chose where on the efficiency curve, we want to be as we balance growth and profit, right? We could decide we want to invest more in ad spend, but that lost dollar will be marginally more inefficient relative to the first dollar of ad spent.  But we'll get more revenue growth out of that."

30.     Later, Murthy also explained:

It is a sequential pullback in ad spend.  And we've talked about how that is essentially returning to normal seasonal dynamics.  If you actually harken back to 2019 and look at A&M as a percentage of revenue, it decline from 3Q to 4Q by something like 650 basis points.

So my point being that what we have now talked about a pullback in ad spend is returning to essentially the way it used to be pre-Covid and that is one of the important drivers of the full year adjusted EBITDA that we have guided to, that's actually a large part of what it is.

I will also say just because we are pulling back in ad spend does not mean that we are not spending at all, right?  Like it's not that we are going dark, far from that.  So we continue to have ad spend in the BetterHelp business, and we are essentially looking to the ad prices and decided where we want to be.

31.     Later in the same conference, Gorevic described "doing more in larger media sort of mass media outlets.  And some of that's just in response to the fact that the price of advertising in those mass media channels has come down."

6

32. After the Conference, on December 2, 2022, Piper Sandler analyst Jessica Tassan offered an optimistic view of BetterHelp's revenue, opinion BetterHelp could grow "36% globally in 2022" and "low 20% global BetterHelp growth y/y" in 2023. Consequently, the Company was rated overweight.

33. The Company's investor presentation dated February 22, 2023 reported BetterHelp's membership. In Q1-2022, BetterHelp had 382,000 members. Membership increased to 408,000 Q2-2022; 437,000 members in 3Q-2022; 450,000 members in 4Q-2022, and, 467,000 members in 1Q-2023. This was the first investor presentation in which the Company reported BetterHelp membership figures.

34. On a February 22, 2023 earnings call, William Blair analyst Jack A. Senft asked about expected BetterHelp membership growth. Murthy replied that while membership growth was unlikely to experience the "hyper growth" witnessed during the business's early years:

> There remains a long runway for growth in this market. If you think about virtual therapy, it's still underpenetrated and a lot of the structural issues are on access and costs aren't getting addressed in other places. So the tailwinds for this business are still very strong.

35. The above statements in paragraphs 26 to 34 are false and/or materially misleading because:

    a. The Company continued to expand its marketing spend throughout 2023, despite public assurances of that it would pull back its advertising spending;

    b. Increased marketing spend on BetterHelp deteriorated the Company's revenue, with little return for that investment;

    c. Despite the Company's acknowledgment that increased advertising spend would be marginally inefficient due to market saturation, it continued to grow its advertising spend in the BetterHelp business;

d. Despite public statements that there remained "a long runway" for BetterHelp membership growth, BetterHelp's membership stagnated and then decreased in 2023, due to market saturation, largely due to BetterHelp's own marketing.

## THE TRUTH EMERGES

36. On February 20, 2024 (after market hours), Teladoc released its Q4-2023 earnings and hosted its associated earnings call.

37. The Company's Form 10-K demonstrated substantially increased advertising costs in 2023. The Company's 2023 advertising costs were about $668.8 million, up from $623.5 million in 2022 and $416.7 million in 2021.

38. The Form 10-K explained, "[t]his increase was substantially driven by higher digital and medial advertising costs related to BetterHelp."

39. Gorevic conceded, "revenue and margins were below our expectations in the quarter as we saw lower yields on marketing spend."

40. Murthy explained, BetterHelp's "[r]evenue was $276 million in the fourth quarter, roughly flat versus the prior year and down 3% sequentially."

41. The Company's investor presentation, released the same day, further revealed BetterHelp quarterly revenue slipped $1 million compared to 4Q-2022 and BetterHelp suffered its second consecutive sequential loss, losing about $10 million from 3Q-2023 to 4Q-2023.

42. The investor presentation also showed BetterHelp lost members over 2023. In 1Q-2023, BetterHelp had 467,000 members. This increased to 476,000 in 2Q-2023. Membership fell each quarter since. BetterHelp 459,000 members in 3Q-2023. BetterHelp had 425,000 members in 4Q-2023 – a 10.7% decline since 4Q-2023, despite increased advertising spending.

8

43.     During the question-and-answer portion, Barclays analysis Stephanie July Davis asked about the outlook for Betterhelp.  Gorcevic described what caused Betterhelp's weaker-than-expected revenue:

> What drove that was weaker customer acquisition trends in the second half of the year.  There are a bunch of factors that go into that.  In particular, we saw pressure on our customer acquisition costs in social media channels.  We're fortunate, I guess, the good part is, we have a diversified set of channels and the higher overall spend levels as we get to higher levels, the more we press on sort of across of those channels.  So we felt the impact of that in the second half of the year.

44.     Murthy further admitted:

> [I]f you sort of take a step back and just think about the BetterHelp business, what I would also say is, with our increased focus of – on profitable growth, our – the BetterHelp business new member acquisition is somewhat gated by the amount of capital we can deploy at what we would consider to be acceptable rates of return during any given period.  So what that means is that the growth in BetterHelp is in part dependent on our ability to efficiently reach new individuals to create awareness for BetterHelp's products and services.  So it is both, I would say, the cost per acquisition trends that we are seeing that we have factored into our business – into our guidance and a continuing theme of how we are balancing top line growth with profitability in this business.

45.     Analysts reacted negatively to the earnings report and membership numbers. George Hill of Deutsche Bank wrote "the business [is] seeming to veer off course with membership down two quarters in a row and with lower yields on marketing spend which are anticipated to persist through 1H of 2024."

46.     Gil Luria of Davidson similarly wrote, "in BetterHelp we expect -1% user growth and slightly negative ARPU in a business that is proving difficult to grow with existing marketing dollars and strategies."

47.     Investors reacted negatively to the news. Shares fell $4.85 (23.6%) overnight, from $20.49/share to $15.64/share.

9

**PRESUMPTION OF RELIANCE**

48.     At all relevant times, the market for Teladoc stock was an efficient market for the following reasons, among others:

(a)     Teladoc stock met the requirements for listing and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)     as a regulated issuer, Teladoc filed periodic public reports with the SEC;

(c)     Teladoc regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     Teladoc was followed by securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Teladoc stock promptly digested current information regarding Teladoc from all publicly available sources and reflected such information in the price of the stock. Under these circumstances, all purchasers of Teladoc stock during the Class Period suffered similar injury through their purchase of Teladoc stock at artificially inflated prices and a presumption of reliance applies under the fraud-on-the-market doctrine.

50.     Alternatively, a Class-wide presumption of reliance is also appropriate in this action under the United States Supreme Court's holding in *Affiliated Ute Citizens v. United States*,

406 U.S. 128 (1972), because the Class's claims include allegations concerning omissions. Because this action at least in part involves Defendants' failure to disclose material adverse information regarding the Company's clinical trial operations, positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of Defendants' material Class Period omissions regarding, among other things, the Company's clinical trial operations, that requirement is satisfied here.

## **NO SAFE HARBOR**

51. The "Safe Harbor" warnings accompanying Teladoc's reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor.

52. Defendants are also liable for any false and misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Teladoc who knew that the FLS was false. In addition, the FLS were contradicted by existing, undisclosed material facts that were required to be disclosed so that the FLS would not be misleading. Finally, most of the purported Safe Harbor warnings were themselves misleading because they warned of "risks" that had already materialized or failed to provide meaningful disclosures of the relevant risks.

11

## CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Teladoc stock during the Class Period (the "Class"). Excluded from the Class are Defendants and their families; the officers and directors of the Company, at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Teladoc shares trade on the NYSE and has more than 169.5 million shares outstanding, owned by hundreds, if not thousands, of persons.

55.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to members of the Class which predominate over questions that may affect individual Class members include:

       (a)     whether Defendants violated the 1934 Act;

       (b)     whether Defendants omitted and/or misrepresented material facts;

       (c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

       (d)     whether Defendants knew or recklessly disregarded that their statements were false and misleading;

       (e)     whether the price of Teladoc stock was artificially inflated; and

(f)     the extent of damages sustained by Class members and the appropriate measure of damages.

56.    Plaintiff's claims are typical of those of the Class because Plaintiff and the other Class members sustained damages from Defendants' wrongful conduct.

57.    Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

58.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### Defendants Violated Section 10(b) and SEC Rule 10b-5

59.    Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

60.    During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61.    Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

13

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and other Class members in connection with their purchases of Teladoc stock during the Class Period.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other Class members have suffered damages in connection with their respective purchases and sales of Teladoc stock during the Class Period, because, in reliance on the integrity of the market, they paid artificially inflated prices for Teladoc stock and experienced loses when the artificial inflation was released from Teladoc stock as a result of the revelations and stock price decline detailed herein. Plaintiff and the other Class members would not have purchased Teladoc stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

63.     By virtue of the foregoing, Teladoc and the Individual Defendant have each violated Section 10(b) of the 1934 Act, and Rule 10b-5 promulgated thereunder.

### COUNT II

The Individual Defendants Violated Section 20(a) of the 1934 Act

64.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

65.     The Individual Defendant acted as a controlling person of Teladoc within the meaning of Section 20(a) of the 1934 Act. By reason of their controlling positions with the Company, and their ownership of Teladoc common stock, the Individual Defendants had the power and authority to cause Teladoc to engage in the wrongful conduct complained of herein. Teladoc controlled the Individual Defendants and all of its employees. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Declaring that this action is a proper class action, designating Plaintiff as Lead
Plaintiff, and certifying Plaintiff as a Class representative under Rule 23 of the
Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class
members against all Defendants, jointly and severally, for all damages sustained
as a result of Defendants' wrongdoing, in an amount to be proven at trial, including
interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in
this action, including counsel fees and expert fees; and

D.    Awarding such equitable, injunctive, or other relief as deemed appropriate by the
Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 17, 2024                             Respectfully Submitted,


                                                **LEVI & KORSINSKY, LLP**

                                                Adam M. Apton
                                                33 Whitehall Street, 17th Floor
                                                New York, N.Y. 10004
                                                Tel.: (212) 363-7500
                                                Fax: (212) 363-7171
                                                Email: aapton@zlk.com

                                                *Attorneys for Plaintiff*

15