**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL STARY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TELADOC HEALTH, INC., JASON NATHANIALL GOREVIC, and MALA MURTHY,<br><br>Defendants. | Case No.: 7:24-cv-03849-KMK<br><br>Hon. Kenneth M. Karas |
| ANDREW WAITS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TELADOC HEALTH, INC., JASON GOREVIC, and MALA MURTHY,<br><br>Defendants. | Case No.: 7:24-cv-05339-KMK<br><br>Hon. Kenneth M. Karas |

**ALI TOUAT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO THE COMPETING MOTIONS FOR LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     ARGUMENT ............................................................................................................... 3

        A.      The PSLRA Process............................................................................................ 3

        B.      Touat Is the Presumptive Lead Plaintiff. ...................................................... 5

                1.      Touat Has the Largest Financial Interest. ............................................... 5

                2.      Waits and Marit Overstate Their Financial Interest in the Litigation. ................... 5

                3.      Touat Meets the Typicality and Adequacy Requirements of Rule 23. ................. 11

        C.      No Proof Exists to Rebut the Presumption in Favor of Touat's Appointment as
                Lead Plaintiff. ................................................................................................. 13

III.    CONCLUSION............................................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,*
  258 F.R.D. 260 (S.D.N.Y. 2009) ...................................................................... 12

*Bricklayers' & Allied Craftworkers Local #2 v. New Oriental Educ. & Tech. Grp. Inc.*,
  2022 WL 1515451 (S.D.N.Y. May 13, 2022) ........................................................ 5

*In re Centerline Holding Co. Sec. Litig.,*
  Nos. 08 Civ. 505 (SAS), et. al., 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ......................... 7

*Chahal v. Credit Suisse Grp. AG.,*
  Nos. 18-CV-02268 (AT)(SN); et. al., 2018 WL 3093965 (S.D.N.Y. June 21, 2018) .............. 5

*In re Comverse Tech., Inc. Sec. Litig.,*
  No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .................... 5, 10

*Dura Pharmaceuticals, Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................. 6, 9, 10

*Espinoza v. Whiting*,
  Nos. 4:12cv1711 SNLJ, et. al., 2013 WL 171850 (E.D. Mo. Jan. 16, 2013) ........................ 11

*In re Facebook, Inc.,*
  288 F.R.D. 26 (S.D.N.Y. Dec. 6, 2012) ............................................................... 13

*Faris v. Longtop Fin. Techs. Ltd.,*
  Nos. 11 Civ. 3658 (SAS), et. al., 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ..................... 12

*Foley v. Transocean Ltd.,*
  272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................... 12, 13

*Foster v. Maxwell Techs., Inc.*,
  Nos. 13-cv-00580-BEN-RBB, et. al., 2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) ............. 10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990) .......................................................................... 9

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
  616 F. Supp. 2d 461 (S.D.N.Y. 2009) .................................................................. 4

*In re K-V Pharm. Co. Sec. Litig.*,
  No. 11CV01816 AGF, 2012 WL 1570118 (E.D. Mo. May 3, 2012) .................................... 11

*In re LightInTheBox Holding Co., Sec. Litig.*,
No. 13 Civ. 6016(PKC), 2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013)................................ 10

*Maliarov v. Eros Int'l PLC*,
15-CV-8956 (AJN); et. al., 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ........................... 8, 9

*Marjanian v. Allied Nev. Gold Corp.*,
3:14-cv-0175-LRH-WGC, et. al., 2014 WL 12769810 (D. Nev. Nov. 7, 2014).................... 11

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
256 F.R.D. 620 (E.D. Wis. 2009) ....................................................................................... 7

*Ragan v. Appharvest, Inc.*,
No. 21-cv-7985 (LJL), 2021 WL 5909116 (S.D.N.Y. Dec. 13, 2021).................................... 9

*Ruland v. InfoSonics Corp.*,
Nos. 06cv1231 BTM(WMc), et. al., 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006)............... 10

*Sallustro v. Cannavest Corp.*,
93 F. Supp. 3d 265 (S.D.N.Y. 2015)............................................................................. 2, 6, 10

*Schueneman v. Arena Pharm., Inc.*,
No. 10cv1959 BTM(BLM), 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ...................... 10, 11

*Topping v. Deloitte Touche Tohmatsu CPA*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015).................................................................................... 9

*In re Turquoise Hill Res. Ltd.,*
No. 20-cv-8585 (LJL), 2021 WL 148752 (S.D.N.Y. Jan. 15, 2021) ...................................... 13

*Villare v. Abiomed, Inc.*,
19 Civ. 7319 (ER), et. al., 2020 WL 3497285 (S.D.N.Y. June 29, 2020) ........................... 3, 7

*Winer Family Trust v. Queen*,
503 F.3d 319 (3d Cir. 2007).................................................................................................. 9

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

## I.    PRELIMINARY STATEMENT

The Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4) (the "PSLRA"), sets forth a clear directive in terms of appointing lead plaintiffs to serve in securities fraud class actions. The PSLRA applies in the case at hand and, under the PSLRA, movant Ali Touat's motion for appointment as lead plaintiff and selection of counsel should be granted.

The PSLRA states that the movant with the "largest financial interest" that is otherwise adequate and typical shall be appointed as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Touat has the largest financial interest in this action because his "recoverable losses" are greater than any of the other movants for lead plaintiff, as illustrated in the following table:

| Movant | Recoverable Losses |
|---|---|
| Ali Touat | $67,131 |
| | |
| Andrew Waits | ($80,854 gain) |
| | |
| Joshua Marit | $56,345 |
| | |
| Zhuoran Wu | $14,166 |

Touat also meets the typicality and adequacy requirements of Rule 23. Touat acquired his stock in Teladoc on September 19, 2023. *See* Dkt. No. 18-1 (Touat's Certification). He then held his shares through the end of the Class Period, including during the corrective disclosure on February 20, 2024 that precipitated this action. *See* Dkt. No. 18-2 (Touat's Loss Chart). As such, Touat purchased squarely within the Class Period and suffered a recoverable loss, typical of other Class members. Touat has also committed to overseeing the prosecution of these Actions to ensure their success. He has attested to supervising his attorneys at Levi & Korsinsky, LLP and keeping abreast of developments in the litigation. *See* Dkt. No. 18-4 (Touat's Declaration). His

commitment to the case, along with his 30 years of investing experience, will prove advantageous for the plaintiffs in this litigation. Touat, therefore, has made a *prima facie* showing of adequacy for the purposes of Rule 23.

Two movants, Andrew Waits and Joshua Marit, purport to have a larger financial interest in the action.[1] However, these movants incorrectly inflated their financial interests by including **unrecoverable** losses in their motion papers. Specifically, Waits claims to have purchased 210,500 shares during the Class Period and sustained a loss of approximately $300,000. However, Waits sold every single one of these shares before the end of the Class Period, meaning that any losses he sustained in connection with his purchases are unrelated to the alleged fraud and therefore cannot be included in the "financial interest" analysis on the present motion. Indeed, courts routinely disregard losses that are unassociated with the allegations in the action, such as when "in-and-out" shares are bought and then sold prior to the revelation of any corrective information. *See*, *e.g.*, *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases). In-and-out shares do not give rise to recoverable damages and, therefore, cannot be used to inflate a "financial interest" at the lead plaintiff stage. When disregarding the losses supposedly incurred in connection with these shares, Waits in fact nets out with a gain of nearly $81,000.

The only way Waits has any recoverable damages in this action is if the Court credits the secondary complaint he filed on the eve of the statutory 60-day deadline for filing lead plaintiff motions under the PSLRA. Such tactics are routinely rejected by courts given that they often have no legitimate basis in the facts. Instead, belated alterations to the allegations are widely perceived as improper "gamesmanship" to "manipulate" the lead plaintiff proceedings.

---

[1] The only other movant, Zhuoran Wu, withdrew his motion for lead plaintiff. Dkt. No. 36.

*Villare v. Abiomed, Inc.*, 19 Civ. 7319 (ER), 2020 WL 3497285, at \*4 (S.D.N.Y. June 29, 2020). That is precisely what Waits has attempted here. Without any factual basis for it, he inserted an additional corrective disclosure in his secondary complaint for the sole purpose of being able to claim recoverable losses which, in turn, has allowed the various law firms representing him to compete for the lead plaintiff position.

Marit suffers from the same infirmity. He sold nearly all of his Teladoc shares by August 2, 2023, well before the end of the Class Period and months in advance of the alleged corrective disclosures in either of the current complaints. In fact, of the 123,852 shares he purchased, Marit sold over 90% of his shares (114,182 to be exact) before the corrective disclosures. Consequently, any losses he sustained when selling these shares are unrecoverable. These losses cannot be considered when evaluating his "financial interest" for the lead plaintiff motions. When properly disregarding the unrecoverable losses he supposedly sustained on these trades, Marit's recoverable loss falls to approximately $56,000.

By comparison, Touat sustained a recoverable loss of $67,130.96. He therefore possesses the "largest financial interest" in the outcome of the litigation and is presumptively the "most adequate plaintiff" for the purpose of serving as lead plaintiff pursuant to the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B). As none of the competing movants can rebut this presumption with proof that Touat is somehow atypical or inadequate, Touat is entitled to be appointed as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, for these reasons, Touat respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    The PSLRA Process.

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the

3

Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as lead plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. § 78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23. 15 U.S.C. § 78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc). Congress created the lead plaintiff presumption because it believed that the movant with the largest loss would be most incentivized to actively prosecute the securities class action and monitor counsel:

> Further, the provisions created a "rebuttable presumption" that the most "adequate plaintiff" is, inter alia, the person or group of persons that "has the largest financial interest in the relief sought by the class." "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."[2]

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

---

[2] Unless otherwise noted, citations are omitted, and emphasis is added.

### B.    Touat Is the Presumptive Lead Plaintiff.

#### 1.    *Touat Has the Largest Financial Interest.*

While the PSLRA does not define "financial interest," Courts in the Second Circuit and this District typically find that the recoverable loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *see also Bricklayers' & Allied Craftworkers Local #2 v. New Oriental Educ. & Tech. Grp. Inc.*, 2022 WL 1515451, at *2 (S.D.N.Y. May 13, 2022) (collecting cases); *Chahal v. Credit Suisse Grp. AG.,* Nos. 18-CV-02268 (AT)(SN); et. al., 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018) (equating financial interest with economic loss). As demonstrated below, Touat possesses the largest financial interest compared to the other movants because he has the greatest recoverable loss:

| Movant | Recoverable Losses |
|---|---|
| Ali Touat | $67,131 |
| | |
| Andrew Waits | ($80,854 gain) |
| | |
| Joshua Marit | $56,345 |
| | |
| Zhuoran Wu | $14,166 |

*See* Dkt. Nos. 18-2; 23-3; 31-3; and 34-3; *see also* Supplemental Declaration of Adam M. Apton, Exhibits A and B (calculating "recoverable loss" for Waits and Marit).

#### 2.    *Waits and Marit Overstate Their Financial Interest in the Litigation.*

While Waits and Marit claim to possess a larger financial interest in the litigation, their arguments directly contradict the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v.*

*Broudo*, 544 U.S. 336 (2005), and its application in lead plaintiff proceedings. In *Dura*, the Supreme Court held that a securities fraud plaintiff can only recover the losses he or she sustained as a result of the alleged fraud and not, for example, unrelated market declines. In the context of lead plaintiff decisions, courts around the country routinely hold that a lead plaintiff movant's financial interest cannot include losses that are unrecoverable, *i.e.*, unrelated to the alleged fraud. This most commonly arises where, as here, movants attempt to claim losses on transactions that occurred prior to the revelation of the alleged fraud. *See*, *e.g.*, *Sallustro v. Cannavest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases). As explained below, neither Waits nor Marit possess the financial interest they claim in their motion.

a.      *Waits has no recoverable losses under the Stary complaint.*

Plaintiff Paul Stary commenced this action on May 17, 2024.[3] Notice of the class action was disseminated that same day. Dkt. No. 18-3. Consequently, motions for lead plaintiff were due 60 days thereafter on July 16, 2024. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Despite having representation from two law firms, Pomerantz LLP and Bronstein, Gerwitz & Grossman, LLC (Dkt. No. 31-6), Waits waited until the eve of the July 16, 2024 filing deadline—specifically, within 24 hours of it—to commence a secondary action. *See Waits v. Teladoc Health, Inc. et al.*, No. 7:24-cv-05339-KMK, Dkt. No. 1 (Complaint dated July 15, 2024). Waits' motive for filing this secondary complaint is self-evident: without it, he would have zero recoverable losses in the lawsuit and be precluded from filing a motion for lead plaintiff.

Additional complaints are not allowed when filed for the purposes of exacting "gamesmanship" over the lead plaintiff process. *See In re Centerline Holding Co. Sec. Litig.*, Nos.

---

[3] The undersigned counsel at Levi & Korsinsky, LLP represented Mr. Stary in connection with the commencement of this action.

08 Civ. 505 (SAS), et. al., 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008). Courts reject attempts to game the system so as to discourage "unscrupulous movants" from "manipulate[ing] the lead plaintiff determination." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009). "[N]umerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Villare*, 2020 WL 3497285, at *4. In *Abiomed*, plaintiff/movant Barry, attempted to expand the class period hours before the PSLRA deadline, and in doing so inflated Barry's losses by almost $200,000. *Id*. at *13. Judge Ramos concluded that the additional complaint proposed at the eleventh hour should not be used for purposes of the lead plaintiff analysis, due to concerns that the expansion was merely a product of gamesmanship. *Id*.

Waits is attempting to do just that here. In an attempt to recoup his unrecoverable losses, Waits filed an additional complaint just hours before the PSLRA deadline with just one material difference from the initial first filed *Stary* complaint: an additional corrective disclosure that would allow him and his counsel to claim a loss of approximately $300,000. Specifically, the *Stary* complaint alleges one corrective disclosure at the end of the Class Period on February 20, 2024, while the *Waits* complaint alleges an additional corrective disclosure on October 24, 2023 in addition to the corrective disclosure on February 20, 2024. *Compare Stary* Complaint (Dkt. No. 1), ¶¶36-47, *with Waits* Complaint (No. 7:24-cv-05339-KMK, Dkt. No. 1), ¶¶37-48.

According to both complaints, the corrective disclosure on February 20, 2024 prompted a decline of approximately 25% in the price of Teladoc's stock. It was precipitated by Teladoc's revelation of "weaker customer acquisitions trends" relating to the Company's BetterHelp business and analyst reports that the business was "veer[ing] off course." *See Stary* Complaint, Dkt. No. 1

7

at ¶¶43-44; *Waits* Complaint, No. 7:24-cv-05339-KMK, Dkt. No. 1 at ¶¶40-48. Shareholders who held Teladoc shares over this disclosure suffered significant losses. Waits, however, was not one of them. He sold every single one of his shares of Teladoc stock weeks if not months beforehand, meaning that Waits did not sustain any recoverable losses as a result of the February 20, 2024 corrective disclosure. Consequently, Waits filed a new complaint containing an additional corrective disclosure occurring on October 24, 2023. This corrective disclosure consists only of Teladoc reporting its third quarter earnings and a resulting stock price decline of <5% in Teladoc's stock. *Waits* Complaint, No. 7:24-cv-05339-KMK, Dkt. No. 1 at ¶¶37-39. This is all Waits alleges in his complaint and, as such, provides no factual basis for including his losses as part of his "financial interest" in the present motion.

Waits' actions are no different than Barry's in *Abiomed*, *supra*. By including an additional corrective disclosure just hours before the 60-day PSLRA deadline, Waits was able to gain "credit" for thousands of shares that otherwise would not be eligible due to the fact that they were not held throughout the end of the Class Period, *i.e.*, on February 20, 2024. Indeed, out of the entire 210,500 shares purchased by Waits, he held zero on February 20, 2024. *See* Supplemental Declaration of Adam M. Apton, Exhibit A (spreadsheet identifying non-causally related losses and calculating Waits' recoverable loss).

Waits' gamesmanship to manipulate the lead plaintiff proceedings in the eleventh hour should not be tolerated or rewarded. Courts in this District have consistently expressed their reluctance "to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, 15-CV-8956 (AJN); et. al., 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016). Here, as in *Eros*, a complaint with additional

8

allegations was filed well into the 60-day PSLRA timeframe which meant individuals who would otherwise "be able to meet the requirements of a lead plaintiff motion" under the expanded disclosure date would be "precluded from filing such motions given the expiration of the PSLRA's time limit for doing so." *Eros*, 2016 WL 1367246, at \*4 (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015)). "The specter of gamesmanship on these facts causes the Court to question whether [movant] will 'fairly and adequately protect the interests of the class.'" *Eros*, 2016 WL 1367246, at \*4 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). *See also Ragan v. Appharvest, Inc.*, No. 21-cv-7985 (LJL), 2021 WL 5909116, at \*8 (S.D.N.Y. Dec. 13, 2021) (rejecting proposed new class period because "at the time that Plymouth County made its purchases, neither Novus nor AppHarvest could have made any statements the falsity of which was demonstrated or corrected by the August 2021 release").[4]

### b.   *Marit has a recoverable loss of approximately $56,000.*

In *Dura*, *supra*, the Supreme Court held that investors cannot recover under the federal securities laws for economic loss unless the loss was directly caused by or related to the disclosure of the fraud. *Id.* at 344-46 (holding that plaintiffs "must prove proximate causation and economic loss"). Accordingly, where an investor purchases stock at a price inflated by a fraudulent

---

[4] Waits' dependence on the October 24, 2023 corrective disclosure also exposes him to a "unique defense." Defendants will argue that the decline in Teladoc's stock price following the disclosure was unrelated to the alleged fraud. If that argument is successful, then Waits will not have any recoverable losses for the reasons described above (but instead a gain of approximately $81,000). He will also not have standing to pursue claims on behalf of the class. Thus, Waits is uniquely motivated to preserve and prioritize the October 24, 2023 corrective disclosure above all other issues in this case and, for that reason, cannot serve as the lead plaintiff. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *see also Winer Family Trust v. Queen*, 503 F.3d 319, 323-25 (3d Cir. 2007) (plaintiff lost standing to pursue claims after court dismissed claims based on misrepresentations occurring in first part of class period).

9

misrepresentation or omission and sells the stock before any disclosure of the fraud (*i.e.*, an "in-and-out" trade), the investor has suffered no loss caused by the fraud even though they may have lost money on their investment. *Dura*, 544 U.S. at 342-343 (when a "purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Courts apply *Dura* when evaluating lead plaintiff movants' financial interests in litigation because "it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed." *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011). "[T]he logical outgrowth of [the *Dura*] holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff." *In re Comverse Tech.*, 2007 WL 680779, at *4. In line with the holding in *Dura*, courts have used the amount of potential recovery in the relief sought by the class when determining the "largest financial interest." *Foster v. Maxwell Techs., Inc.*, Nos. 13-cv-00580-BEN-RBB, et. al., 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class."); *Ruland v. InfoSonics Corp.*, Nos. 06cv1231 BTM(WMc), et. al., 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (finding for lead plaintiff purposes the individual with the "largest potential recovery" as the presumptive lead plaintiff); *see also Sallustro*, 93 F. Supp. 3d at 273 ("when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures"); *In re LightInTheBox Holding Co., Sec. Litig.*, No. 13 Civ. 6016(PKC), 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel."). This

10

methodology connects the share price decline to corrective information and results in loss figures that are recoverable under *Dura*. *See In re K-V Pharm. Co. Sec. Litig.*, No. 11CV01816 AGF, 2012 WL 1570118, at *4 (E.D. Mo. May 3, 2012) ("[F]or purposes of evaluating financial interest, it makes sense to disregard any gains or losses resulting from stock trades before the truth was disclosed.") (quoting *Schueneman*, 2011 WL 3475380, at *3).

Thus, when applying *Dura* and disregarding any losses attributable to "in-and-out" trades (*i.e.*, trades resulting in losses that were not caused by the alleged fraud), Marit's **recoverable** loss in the action is approximately $56,000. *See* Supplemental Declaration of Adam M. Apton, Exhibit B (spreadsheet identifying non-causally related losses and calculating Marit's recoverable loss). As a result, Touat has the largest financial interest in the relief sought among the competing movants. *See Marjanian v. Allied Nev. Gold Corp.*, 3:14-cv-0175-LRH-WGC, et. al., 2014 WL 12769810, at *4 (D. Nev. Nov. 7, 2014) ("This figure includes sales of the stock that occurred . . . before Allied Nevada revealed their misrepresentations . . . . Including these sales in the calculation of total losses risks what *Dura* sought to prevent: loss figures that take into account not just losses caused by the fraud, but also 'changed economic circumstances, changed investor expectations, new industry-specific or firm specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.'") (citations omitted); *Espinoza v. Whiting*, Nos. 4:12cv1711 SNLJ, et. al., 2013 WL 171850, at *3 (E.D. Mo. Jan. 16, 2013) (the "Patriot Coal Investor Group's well-reasoned approach addresses the problems the *Dura* Court and others have cautioned against.").

### 3.    *Touat Meets the Typicality and Adequacy Requirements of Rule 23.*

In addition to possessing the greatest financial interest, Touat satisfies the adequacy and typicality requirements of Rule 23. "At the lead plaintiff stage of the litigation, in contrast to the

class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Faris v. Longtop Fin. Techs. Ltd.,* Nos. 11 Civ. 3658 (SAS), et. al., 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)).

"Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. Touat's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members because it acquired Teladoc securities at prices that were artificially inflated by Defendants misconduct and suffered loses when the truth was revealed. Touat is, and will be, pursuing the same theory of liability as all other Class Members. *See* Dkt. No. 17 (Memorandum in Support of Touat's Motion); Dkt. No. 18-1 (PSLRA Certification).

In addition to meeting the "typicality" requirements under Rule 23, Touat also makes the necessary *prima facie* showing of "adequacy." To satisfy the adequacy requirement at this stage of the proceedings, Touat must make a preliminary showing that "(1) [his choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) [it has] a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 131 (S.D.N.Y. 2011). Touat is more than qualified to serve as Class representative, as he has a bachelor's degree in psychology and has 30 years of experience investing in the stock market. *See* Dkt. No. 18-4 (Touat's Declaration). Likewise, Touat has detailed his motivation and intention to oversee this litigation and his selection of experienced and capable counsel in Levi &

Korsinsky. *See* Dkt. Nos. 18-1 and 18-5 (Touat's Certification and Levi & Korsinsky Resume). This demonstrates that Touat does not have interests antagonistic to the class and will adequately represent the interests of the proposed class. Accordingly, Touat has made a preliminary showing that he satisfies the adequacy and typicality requirements of Rule 23.

As Touat has the largest financial interest in the litigation and satisfies the adequacy and typicality requirements of Rule 23, he is entitled to the presumption of being the "most adequate plaintiff" to represent the Class.

### C. No Proof Exists to Rebut the Presumption in Favor of Touat's Appointment as Lead Plaintiff.

Importantly, because Touat has the largest financial interest in this litigation, the PSLRA provides a rebuttable presumption that it is the most adequate plaintiff to represent the Class. The "strong presumption" in favor of appointing Touat as Lead Plaintiff can only be rebutted with "proof" that Touat is somehow atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Facebook, Inc.,* 288 F.R.D. 26, 40 (S.D.N.Y. Dec. 6, 2012) ("***exacting proof***" necessary to "rebut the PSLRA's presumption" in favor of most adequate lead plaintiff). "Mere speculation" is insufficient to rebut the lead plaintiff presumption. *In re Turquoise Hill Res. Ltd.,* No. 20-cv-8585 (LJL), 2021 WL 148752, at *5 (S.D.N.Y. Jan. 15, 2021) (citing *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff.")). No such proof exists here. Touat has no conflicts with the members of the class and is motivated to recover the heavy losses he suffered. Accordingly, Touat is both typical and adequate and his Motion should be granted in its entirety.

13

**III.    CONCLUSION**

For the foregoing reasons, Touat respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: July 30, 2024                                        Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton (AS-8383)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel Ali Touat and [Proposed]*
*Lead Counsel for the Class*