UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

PAUL STARY, Individually and on Behalf of :    Civil Action No. 7:24-cv-03849-KMK
All Others Similarly Situated,             :

                      :    <u>CLASS ACTION</u>

             Plaintiff,    :

                      :    JOSHUA MARIT'S OPPOSITION TO
   vs.                     :    COMPETING MOTIONS FOR
                      :    APPOINTMENT AS LEAD PLAINTIFF

TELADOC HEALTH, INC., JASON    :
NATHANIALL GOREVIC, and MALA    :
MURTHY,                      :

                 Defendants.    :

———————————————————————— x

4857-2998-3188.v1

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ....................................................................................................1

II.  ARGUMENT ...........................................................................................................2

    A.   Mr. Waits Is Not Eligible for Appointment as Lead Plaintiff ...............................3

    B.   The Remaining Movants Do Not Possess the Largest Financial Interest ................7

    C.   Mr. Marit Is the Presumptive Lead Plaintiff ...............................................8

III. CONCLUSION .........................................................................................................9

4857-2998-3188.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ....................................................................................6, 7

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ............................................................................................................1

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................................8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)............................................................................................2, 3

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)...................................................................................................7

*Jiang v. Chirico*,
  2024 WL 967084 (S.D.N.Y. Mar. 5, 2024) ........................................................................7

*Lee v. iQIYI, Inc.*,
  2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020).................................................................5, 6

*Maliarov v. Eros Int'l PLC*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)................................................................2, 4, 5

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019).....................................................................5

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)..............................................................................3, 4, 5

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
  §78u-4(a)(3)(B)(iii)(I).........................................................................................................2
  §78u-4(a)(3)(B)(iii)(I)(cc)....................................................................................................9

4857-2998-3188.v1

## I.    INTRODUCTION

Four lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] *See* ECF 16, 21, 28, 33. While, at first glance, it appears that Mr. Waits might otherwise be designated the most adequate plaintiff, the circumstances surrounding his motion evoke the type of lawyer-driven machinations that precipitated the enactment of the PSLRA and preclude the Court here from appointing him lead plaintiff.

Despite the magnitude of his claimed loss, Mr. Waits does not trigger the PSLRA's most adequate plaintiff presumption. Even a cursory review of the allegations in the only complaint on file against Teladoc Health, Inc. up until ***the day before the lead plaintiff deadline*** expired, confirms that ***Mr. Waits suffered no harm whatsoever***. Recognizing this inconvenient reality, mere hours before the lead plaintiff motion deadline, Mr. Waits' counsel filed a complaint with one key distinction: it added a partial disclosure of the fraud on October 24, 2023, ***nearly four months*** before the lone revelation of the fraud alleged in the operative complaint on file for 59 of the 60 days prior to the lead plaintiff deadline.

The filing of the *Waits* complaint at the eleventh hour with an unspecified loss causation theory was a necessary precursor to Mr. Waits' lead plaintiff motion because Mr. Waits had sold ***all*** of his Teladoc shares on February 13, 2024, ***one week before*** the disclosure which revealed the truth regarding defendants' alleged fraud. *See* ECF 31-3. In other words, had Mr. Waits' counsel not filed a complaint uniquely designed to allow Mr. Waits to construct a ***compensable*** Teladoc trading loss, Mr. Waits would not have been able to claim any financial interest in the relief sought by the class – rendering Mr. Waits ineligible for appointment as lead plaintiff. *See, e.g.*, *Dura Pharms.,*

---

[1]    The movants are: (1) Joshua Marit; (2) Andrew Waits; (3) Ali Touat; and (4) Zhuoran Wu.

4857-2998-3188.v1

*Inc. v. Broudo*, 544 U.S. 336, 344 (2005) (holding that only losses "sustain[ed] 'when the facts . . . become generally known' and 'as a result' share value 'depreciate[s]'" are recoverable under the federal securities laws).[2]  To guard against such gamesmanship, courts refuse to appoint movants who attempt to manufacture their loss, as Mr. Waits does here.  *See Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at \*4 (S.D.N.Y. Apr. 5, 2016) (recognizing that courts are "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour").

In contrast, Mr. Marit respectfully submits that he is the only movant who meets all the statutory requirements that govern the Court's choice of the presumptive lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The remaining movants suffered smaller losses and their motions should thus be denied.

## II.    ARGUMENT

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).  "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'"  *Id.*  "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff."  *Id.*

Importantly, in "inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'"  *Id.* at 265.

---

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

4857-2998-3188.v1

In addition, the presumptive lead plaintiff cannot be "'subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Id.* at 222.

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.* at 267.

### A.    Mr. Waits Is Not Eligible for Appointment as Lead Plaintiff

Until July 15, 2024, one day before the lead plaintiff motion deadline, the only complaint filed against Teladoc alleged that the wrongdoing at issue in this case had been revealed on a single day: February 20, 2024.  The disclosure of the fraud on February 20 rendered Mr. Waits ineligible for appointment as lead plaintiff as he "was a complete 'in-and-out trader' – 'buying and selling into and out of the securities at issue during the class period' – and sold all [his] share[s] before the [February 20, 2024] disclosure." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015).  Eager to remedy this fatal defect, Mr. Waits' counsel filed a new complaint just hours before the lead plaintiff motion deadline was set to expire, adding an allegation that the truth regarding Teladoc's alleged fraud was first partially disclosed on October 24, 2023 – ***nearly four months*** before the single disclosure alleged in the operative complaint. *Waits*, ECF 1 at ¶8.

Beyond the troubling timing of his complaint, Mr. Waits' counsel also issued numerous press releases prior to the filing of the *Waits* complaint announcing the opportunity to seek lead plaintiff appointment in this case – from as early as May 20, 2024 to just ***one day*** before the filing of the *Waits* complaint – ***none of which make any mention of this novel loss causation theory***. *See*

- 3 -

Declaration of David A. Rosenfeld in Support of Joshua Marit's Opposition to Competing Motions for Appointment as Lead Plaintiff, Ex. 1. It is thus evident that – except for the eleventh-hour filing of the *Waits* complaint – Mr. Waits has no financial interest in the relief sought by the class.

To guard against such gamesmanship, courts refuse to appoint movants, like Mr. Waits here, who attempt to manipulate the size of their loss. For example, in *Maliarov*, 2016 WL 1367246, the court faced the exact predicament as here: a lead plaintiff filing a self-serving complaint the day of a lead plaintiff motion deadline alleging a partial disclosure not pleaded in the previously-filed complaints. *Id.* at *4. In rejecting such eleventh-hour maneuvering, the court first recognized that "the other lead plaintiff movants 'filed their motions to serve as lead plaintiff in reliance on the [c]omplaint[s]' that had been filed up to that date." *Id.* Based on this concern, the court held that it was "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Id.* The court thus questioned the movant's ability to "'fairly and adequately protect the interests of the class'" given the "specter of gamesmanship." *Id.* Consequently, and given the court's concern that the movant, "unlike other movants, would be completely barred from recovery if no earlier disclosure date is established," the court declined to appoint the movant as lead plaintiff despite alleging a larger loss. *Id.* ("If there is a serious question as to whether a movant's losses are the proximate result of a company's misconduct, courts frequently decline to appoint that person as lead plaintiff.").

Similarly, in *Topping*, "the ostensible partial disclosure was ***not*** included in the original Complaint and was added only when [the movant's counsel] filed its 'Notice of Errata and Corrected Complaint'" which included the necessary allegation. 95 F. Supp. 3d at 618-19 (emphasis in original). The practical effect of the *Waits* complaint's "ostensible partial disclosure" here is as

- 4 -

4857-2998-3188.v1

decisive as in *Topping*: "[t]hey provide [Mr. Waits] with a basis, otherwise absent, for attributing [his] losses to the [Teladoc] fraud." *Id.* at 615; *see also Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (refusing to appoint movant whose counsel filed a complaint after the deadline for motions to serve as lead plaintiff alleging two additional corrective disclosures because, *inter alia*, "a 'principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [the movant] and its counsel have engaged here'").

While the contours of the consolidated complaint, including the appropriate disclosure and loss causation events, will be determined by the Court-appointed lead plaintiff on behalf of the class, there can be no doubt that Mr. Waits is already subject to unique defenses that will consume this case if the Court were to ultimately find that February 20, 2024 is the only actionable disclosure given that Mr. Waits liquidated his entire Teladoc position a week before that date. *See* ECF 31-3. In *Lee v. iQIYI, Inc.*, 2020 WL 6146862, at *2 (E.D.N.Y. Oct. 20, 2020), Magistrate Judge Orenstein articulated the risk to the class of appointing movants who, like Mr. Waits, must rely on an underdeveloped partial corrective disclosure to claim any cognizable losses

> [Mr. Waits'] claims, unlike those of the other leadership candidates and the class as a whole, rely on a theory that [Teladoc's] alleged fraud was apparent, and caused shareholder losses, well before the [February 20, 2024 disclosures regarding the Company's ad-spend]. That may subject [Mr. Waits] to uniquely applicable defense arguments and even undermine the claims of other class members who did not sell their [Teladoc] shares earlier.

*Id*. In appointing as lead plaintiff a class member with less than half of the losses of this movant, the court concluded that "***[w]hatever the plausibility*** of [the movant's] attempt to characterize its losses as flowing from its relatively unique purported ability to detect and respond to [the company's] fraud over a year before [the corrective disclosure relied on by the rest of the class], I conclude that its loss theory renders its claims so atypical as to preclude leadership of the putative class." *Id*.

- 5 -

4857-2998-3188.v1

This precise issue also arose in *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231 (E.D.N.Y. 2011), where Magistrate Judge Pollak declined to appoint a movant alleging a loss nearly three times larger than its competing movant because, like here, that movant "was a total in-and-out trader and may be unable to demonstrate loss causation." *Id.* at 241.  In response, the movant argued that it sold its shares after a partial disclosure purportedly "revealing that the Company's preliminary fourth quarter and full year 2009 results would be far lower than previously forecasted." *Id.* at 238. Judge Pollak, however, held that the movant failed to "allege[] sufficient facts from which this Court can confidently infer that the January disclosure actually revealed fraud or misconduct sufficient to qualify as a partial disclosure," noting that "'[t]here was no disclosure in that January announcement that the reason [the company wasn't] making [its] projections was because [it] had engaged in fraud as opposed to the later announcement which was clearly an exposure of the fraud.'" *Id.* at 240.

Here, the *Waits* complaint's October 24, 2023 partial disclosure is based on Teladoc's third quarter 2023 earnings results and accompanying statements, including revised revenue guidance and a 3.5% membership decline in its BetterHelp segment. *See Waits*, ECF 1 at ¶8.  Defendants will argue that none of the October 24, 2023 revelations in the *Waits* complaint reference the Company's advertising or marketing expenditures or the yields thereof.  By contrast, nearly all of the statements constituting the February 20, 2024 end of Class Period disclosures included explicit references to, or analysis of, the Company's advertising and marketing spending.  *See* ECF 1 at ¶¶9, 11, 13, 14, 37-39, 42-46.  Thus, and as in *Bensley*, the fact that the purported October 24, 2023 partial disclosure as pled lacked any "'announcement [that Teladoc] had engaged in fraud as opposed to the later announcement,'" renders Mr. Waits an inadequate lead plaintiff because "if the district court later finds that the [October 24, 2023] announcement relating to projected revenues does not constitute a

- 6 -

disclosure of fraud, none of [Mr. Waits'] losses would qualify as proximately linked to the alleged fraud in this case."  277 F.R.D. at 240.

Recently, Judge Gardephe was faced with a similar argument and declined to appoint an institutional investor that sold all of its shares after partial corrective disclosures (also earnings-related statements) alleged in a follow-on complaint filed prior to the lead plaintiff deadline, finding that the institutional investor failed to show that the earnings-related statements revealed "'the truth with respect to the specific misrepresentations alleged.'"  *Jiang v. Chirico*, 2024 WL 967084, at \*8 (S.D.N.Y. Mar. 5, 2024) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig*., 574 F.3d 29, 41 (2d Cir. 2009)).  The court also found that the institutional investor was subject to unique loss causation defenses because none of its "'alleged losses would qualify as proximately linked to the alleged fraud in this case'" if the partial disclosures were later determined to not constitute valid corrective disclosures.  *Id*.  at \*9 n.7.

There are two independently sufficient grounds to deny Mr. Waits' lead plaintiff motion. The Court can simply summarily reject Mr. Waits' eleventh-hour attempt to usurp control of this case on adequacy grounds, or it can find that Mr. Waits' need to rely on an alternate theory to demonstrate loss causation subjects him to unique defenses.

**B.      The Remaining Movants Do Not Possess the Largest Financial Interest**

Because the PSLRA expresses little guidance in prescribing a uniform method for assessing a party's financial loss, courts in this Circuit have routinely examined the following four factors in calculating that interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate

4857-2998-3188.v1

loss suffered during the class period." *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

Here, applying the four-factor criteria, it is clear that Mr. Marit has the greatest financial interest in the relief sought by the class:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Losses |
|---|---|---|---|---|
| **Mr. Marit** | **123,852** | 9,671 | **$216,786** | **$167,673 (FIFO)/ $163,418 (LIFO)**[3] |
| Mr. Touat | 10,412 | **10,412** | $213,966 | $67,130 (FIFO/LIFO) |
| Zhuoran Wu | 1,600 | 1,600 | $36,730 | $14,165 (FIFO/LIFO) |

Accordingly, by suffering larger losses (regardless of accounting methodology), purchasing more shares, and expending more net funds on his Class Period Teladoc investment than any of the above-referenced movants, Mr. Marit has the greatest financial interest in the outcome of this litigation. The remaining movants' motions should thus be denied.

### C.    Mr. Marit Is the Presumptive Lead Plaintiff

Mr. Marit is the only movant that satisfies all of the PSLRA's requirements to trigger the most adequate plaintiff presumption. Aside from possessing the largest financial interest, the PSLRA requires that, to be designated the presumptively most adequate plaintiff, Mr. Marit must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). There is no question that Mr. Marit satisfies this requirement. *See* ECF 22 at 4-5. Mr. Marit is an experienced project manager with two decades of investment experience. *See* ECF 23-4. Mr. Marit has amply demonstrated his adequacy by signing a sworn Certification and Declaration stating that

---

[3]   Mr. Marit suffered $167,673 in losses under the first-in, first-out (FIFO) accounting methodology or $163,418 under the last-in, first-out (LIFO) methodology. The remaining movants' losses are the same under both methodologies.

4857-2998-3188.v1

he is willing to serve as, and to assume the responsibilities of, class representative. *See* ECF 23-2, 23-4. As such, Mr. Marit is the exact type of diligent investor the PSLRA envisioned would serve as lead plaintiff. Here, Mr. Marit is the presumptive lead plaintiff and the presumption in his favor cannot be rebutted.

Mr. Marit's motion should be granted.

## III.    CONCLUSION

None of the competing movants satisfy the PSLRA's lead plaintiff requirements. As such, their motions should all be denied.

DATED: July 30, 2024                              Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD


                                                     *s/ David A. Rosenfeld*
                                                 DAVID A. ROSENFELD

                                                 58 South Service Road, Suite 200
                                                 Melville, NY  11747
                                                 Telephone:  631/367-7100
                                                 srudman@rgrdlaw.com
                                                 drosenfeld@rgrdlaw.com

                                                 ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                 JENNIFER N. CARINGAL
                                                 JUAN CARLOS SANCHEZ
                                                 655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
                                                 Telephone:  619/231-1058
                                                 jcaringal@rgrdlaw.com
                                                 jsanchez@rgrdlaw.com

                                                 Proposed Lead Counsel for Proposed Lead Plaintiff

4857-2998-3188.v1