UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL STARY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TELADOC HEALTH, INC., JASON NATHANIALL GOREVIC, and MALA MURTHY,<br><br>Defendants. | Case No.  7:24-cv-03849-KMK |
| ANDREW WAITS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TELADOC HEALTH, INC., JASON GOREVIC, and MALA MURTHY,<br><br>Defendants. | Case No.  7:24-cv-05339-KMK |

REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ANDREW WAITS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 3

    I.       THE OCTOBER 24 DISCLOSURE IS RELATED TO THE FRAUD ALLEGED IN THE *STARY* COMPLAINT .................................................................... 3

    II.     WAITS IS NOT SUBJECT TO UNIQUE DEFENSES ........................................ 6

    III.   THE *WAITS* COMPLAINT IS NOT THE PRODUCT OF "GAMESMANSHIP" .............................................................................. 7

CONCLUSION ..................................................................................................................... 10

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ...................................................................................................9

*Eichenholtz v. Verifone Holdings, Inc.*,
   No. C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ......................................5

*In re Centerline Holding Co. Sec. Litig.*,
   No. 08 CIV. 1026 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008) ...................................9

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ...................................6

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ..............................................................................................6

*Jiang v. Chirico*,
   No. 23 CIV. 1258 (PGG), 2024 WL 967084 (S.D.N.Y. Mar. 5, 2024)....................................9

*Lee v. iQIYI, Inc.*,
   No. 20CV1830LDHJO, 2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020)....................................9

*Maliarov v. Eros Int'l PLC*,
   No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ....................................9

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ...............................9

*Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) .............................................................................................9

*Ragan v. AppHarvest, Inc.*,
   No. 21-CV-7985 (LJL), 2021 WL 5909116 (S.D.N.Y. Dec. 13, 2021) ...................................9

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)...................................................................................................................7

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)........................................................................................9

*Villare v. ABIOMED, Inc.*,
   No. 19 CIV. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020)...................................9

**Statutes**

15 U.S.C. § 78u-4 ...............................................................................................................1

PSLRA ................................................................................................................1, 2, 9

**Rules**

Fed. R. Civ. P. 23................................................................................................1, 5

iii

Lead Plaintiff Movant Waits[1] respectfully submits this reply memorandum of law in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 28); and in opposition to the competing motions of Touat (Dkt. No. 16) and Marit (Dkt. No. 21).[2]

### PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, as discussed at length in his moving and opposition briefs (Dkt. Nos. 30, 40), Waits satisfies the statutory criteria to be entitled to the "most adequate plaintiff" presumption. First, it is undisputed that if the Court considers the October 24 Disclosure in assessing the movants' respective financial interests—as it plainly should, for the reasons set forth herein—then Waits has alleged the largest financial interest in this litigation by a significant margin. Second, Waits has robustly demonstrated his typicality and adequacy under Rule23, including through a detailed declaration attesting to his decision to seek appointment as Lead Plaintiff, his reasons for choosing Pomerantz as Lead Counsel, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder those responsibilities on behalf of the Class. *See generally* Dkt. No. 31-6.

Nevertheless, competing movants Touat and Marit urge the Court to deny Waits's motion, urging the Court not to consider the investment losses that Waits incurred as a result of the

---

[1] All capitalized terms herein are defined in Waits's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 30, 40.

[2] Initially, one other putative Class member, Zhuoran Wu ("Wu"), filed a similar competing motion. *See* Dkt. No. 33. On July 18, 2024, Wu withdrew her competing motion, acknowledging that she "does not appear to have the largest financial interest." Dkt. No. 36 at 2.

1

Defendants' October 24 Disclosure (*i.e.*, when Defendants disclosed declining revenues and membership in Teladoc's BetterHelp segment) in assessing the movants' respective financial interests. First, the competing movants erroneously refuse to acknowledge that the October 24 Disclosure is part and parcel of the same theory of fraud as articulated in both the *Stary* and *Waits* Complaints. Second, they argue that having incurred losses only in connection with the October 24 Disclosure, rather than the February 20, 2024 disclosure at the end of the Class Period (the "February 20 Disclosure"), Waits is subject to purportedly disqualifying unique defenses. Third, citing the timing of the filing of the *Waits* Complaint relative to the PSLRA Lead Plaintiff motion deadline, they argue that considering losses incurred in connection with the October 24 Disclosure would reward supposed "gamesmanship" on the part of Waits or his counsel.

These opposition arguments are uniformly incorrect. Touat and Marit's mischaracterization notwithstanding, the October 24 Disclosure is indisputably connected to the fraud alleged in this litigation—namely, that the Defendants concealed the truth about declining revenues and membership growth in the Company's BetterHelp segment. Nor is there anything "unique" about the fact that Waits incurred losses in connection with the October 24 Disclosure. Indeed, with some 12.249 million shares of Company stock changing hands as the Company's stock price fell $0.71 per share, or 3.92%, during the first trading session after the October 24 Disclosure, Waits is plainly only one of potentially hundreds or thousands of Class members who suffered investment losses as a result of the October 24 Disclosure.[3] Any defenses arising from the timing of Waits' investment losses will thus be common to many Class members, not unique to Waits. Finally, there was no "gamesmanship" involved in the filing of Waits's Complaint. Rather, recognizing that he had incurred significant investment losses in connection with the Defendants' alleged fraud, but that the first-filed *Stary* Complaint unaccountably did ***not*** allege the October 24 Disclosure, Waits promptly filed a second complaint to ensure that the theory of fraud alleged in this litigation would take into account the considerable losses that he and similarly

---

[3] Market data derived from Bloomberg Finance L.P. (last accessed on August 6, 2024).

situated class members incurred as a result of the October 24 Disclosure, rather than myopically focus only on the February 20 Disclosure as alleged in the first-filed *Stary* Complaint.

For the reasons set forth herein, Waits respectfully submits that the Court should grant his motion in its entirety and deny the competing motions of Touat and Marit.

## ARGUMENT

### I. THE OCTOBER 24 DISCLOSURE IS RELATED TO THE FRAUD ALLEGED IN THE *STARY* COMPLAINT

Touat and Marit both refuse to acknowledge the obvious relevance of the October 24 Disclosure to the theory of fraud alleged in this litigation. Marit claims that the October 24 Disclosure forms only part of "an alternate theory" of the fraud in this litigation and accuses Waits of "manufactur[ing] [his] loss". Dkt. No. 41 at 2, 7. Meanwhile, Touat incorrectly claims that Waits has "provide[d] no factual basis for including his losses as part of his 'financial interest'" because the October 24 Disclosure "consists only of Teladoc reporting its third quarter earnings[.]" Dkt. No. 38 at 8.

It is difficult to credit the competing movants' positions. The theory of fraud, as stated in both the first-filed *Stary* Complaint **and** the second-filed *Waits* Complaint, is that the Defendants failed to disclose to investors that:

    a. The Company continued to expand its marketing spend through 2023, despite public assurances . . . that it would pull back its advertising spending;

    b. Increased marketing spend on BetterHelp deteriorated the Company's revenue, with little return for that investment;

    c. Despite the Company's acknowledgment that increased spending would be marginally inefficient due to market saturation, it continued to grow its advertising spend in the BetterHelp business; [and]

    d. Despite public statements that there remained "a long runway" for BetterHelp membership growth, BetterHelp's membership stagnated then decreased in 2023, largely due to BetterHelp's own marketing.

*See* Dkt. No. 1 ¶ 35; *Waits* Dkt. No. 1 ¶ 36. As such, the Defendants' October 24 Disclosure partially revealed to the market certain information that the Defendants are alleged to have

3

previously concealed as part of the alleged fraud—namely, that revenues and membership in the BetterHelp segment were declining.

In arguing otherwise, both competing movants mischaracterize the theory of the alleged fraud in this litigation. Touat dismisses the October 24 Disclosure as simply "Teladoc reporting its third quarter earnings" (Dkt. No. 38 at 8), but this deliberately vague description of the disclosure conspicuously fails to mention that when Teladoc reported its third quarter earnings on October 24, 2023, it "revealed that its BetterHelp segment revenue had declined from $292 million in Q2-2023 to $286 million in Q3-2023" and "also revealed that BetterHelp membership had declined from 476,000 paying users in Q2-2023 to 459,000 paying users in Q3-2023." *Waits* Dkt. No. 1 ¶¶ 37-38. The October 24 Disclosure thus included highly detailed disclosures by the Defendants of information specific to the subject of the Defendants' alleged fraud, namely, the concealment of declining revenues and membership in the Company's BetterHelp segment. Given that these specific disclosures are alleged *verbatim* in the *Waits* Complaint, Touat's claim that the *Waits* Complaint "provides no factual basis" for his claimed losses is plainly at odds with the record.

Further undermining Touat's position is the fact that his moving brief *expressly* adopted the *Waits* Complaint's allegations about the October 24 Disclosure. Indeed, under the heading "**Factual Background**", Touat's motion brief directly quotes the October 24 Disclosure allegations in the *Waits* Complaint, including the specific revelations about the BetterHelp segment that Touat's opposition brief conveniently omits to mention, and places them directly alongside the allegations relating to the February 20 Disclosure that ended the Class Period. *See* Dkt. No. 17 at 2-4. Touat changed his posture and abandoned the allegations in the *Waits* Complaint only *after* reviewing the competing motion papers and determining that Waits, not Touat, would have the largest financial interest if the October 24 Disclosure allegations were included in the theory of the fraud. Waits thus respectfully submits that the Court should take Touat's newly adopted position regarding the merits of the October 24 Disclosure with a grain of salt.

4

Marit, for his part, suggests that the October 24 Disclosure cannot qualify as a corrective disclosure because it did not expressly "reference the Company's advertising or marketing expenditures or the yields thereof." Dkt. No. 41 at 6. Yet the allegations regarding the Company's advertising and marketing expenditures form only part of the theory of fraud as alleged in both the *Stary* and *Waits* Complaints, as do the allegations regarding declining revenue and membership growth in the Company's BetterHelp segment. Specifically, the Complaint alleges, *inter alia*, that unbeknownst to investors, increased advertising and marketing spending contributed to the decline in BetterHelp's revenues, while BetterHelp's membership stagnated and then decreased. The October 24 Disclosure, which laid bare declining revenues and memberships in Teladoc's BetterHelp segment, thus fits squarely within the core theory of the fraud as alleged in both Complaints and does not constitute some "alternate theory," as Marit claims. Dkt. No 41 at 7.

Touat and Marit's refusal to acknowledge the relevance of the October 24 Disclosure to the fraud allegations in the *Stary* Complaint calls their own fitness to serve as Class representatives into question. As discussed in greater detail *infra* at Section II, market data indicates that hundreds or thousands of Teladoc investors in addition to Waits likely suffered investment losses following the October 24 Disclosure. By declining to acknowledge those losses, Touat and Marit are effectively throwing numerous fellow class members under the bus merely to obtain a leadership role in this litigation. This does not evince a readiness to zealously advocate for the interests of the entire Class, as Rule 23's adequacy determination requires, nor to subordinate their own interests to those of other Class members, which they will be required to do if appointed to serve as fiduciaries for the Class. *See Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (finding it "unclear why a plaintiff would argue for" a more restricted class definition "unless it was in the best interest of that particular plaintiff only" because "no benefits accrue" by restricting the class definition).

Moreover, if either movant is appointed Lead Plaintiff, abruptly changes tack, and files an Amended Complaint that ***does*** include the October 24 Disclosure among its allegations (as either movant is almost certain to do), the Defendants will foreseeably use the positions that both movants

have taken at this stage of the litigation against them as this case proceeds.  Being forced to litigate issues that are unique to them and irrelevant to other Class members—*i.e.*, how to reconcile the positions that they have taken in the instant motion practice with their inclusion of the October 24 Disclosure in an Amended Complaint—would subject both movants to disqualifying unique defenses.

## II.    WAITS IS NOT SUBJECT TO UNIQUE DEFENSES

Touat and Marit both claim that Waits is subject to purportedly "unique loss causation defenses" (Dkt. No. 41 at 7) because Defendants will argue that the October 24 Disclosure—that is, the corrective disclosure in connection with which Waits incurred all of his claimed investment losses—was unrelated to the alleged fraud.  *See also* Dkt. No. 38 at 9 n.4.  Marit describes Waits's Complaint as "uniquely designed to allow Mr. Waits to construct a compensable Teladoc trading loss" (Dkt. No. 41 at 1), while Touat argues that "Waits is uniquely motivated to preserve and prioritize" the October 24 Disclosure.  Dkt. No. 38 at 9 n.4.

Touat and Marit's argument fails for multiple reasons.  First, any issues arising from the fact that Waits incurred investment losses in connection with the October 24 Disclosure will hardly be "unique" to Waits.  Rather, they will presumably be common to Waits and the many other Class members who ***also*** incurred losses in connection with that disclosure.  *See*, *e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (rejecting non-reliance unique defense, explaining "the Court is not convinced that this defense is 'unique' with the meaning of the PSRLA. There are undoubtedly many members of the class of plaintiffs who, like [movant], purchased shares of Comverse only after the [partial corrective disclosure]"); *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 309 (S.D.N.Y. 2010) (finding representative plaintiffs adequate and typical because "no unique defenses apply ***only*** to the proposed Class representative.") (emphasis added).  Here, on October 25, 2023, when the Company's stock price fell $0.71 per share, or 3.92%, following the October 24 Disclosure, the trading volume on October 25 was 12,249,722 shares, more than 2.75 times the average daily

trading volume during the Class Period.[4]  Given the sheer number of Teladoc shares traded, there were plainly hundreds, if not thousands, of other Teladoc investors who incurred losses following the October 24 Disclosure, making Waits far from unique among Class members.  In addition, contrary to Marit's assertion, Waits will not be "motivated to prioritize" the October 24 Disclosure above any others.  Rather, as Lead Plaintiff, Waits will be motivated to pursue a theory of the fraud that maximizes compensable class-wide damages—*i.e.*, identifying and alleging all corrective disclosures of the Defendants' alleged fraud—in order to maximize settlement pressure on Defendants and secure the largest possible recovery for ***all*** Class members.

Nor will there be anything "unique" about the Defendants litigating questions of loss causation related to the October 24 Disclosure.  Indeed, the Defendants will presumably litigate loss causation with respect to ***any*** corrective disclosure alleged in this litigation, ***because loss causation is an element of a fraud claim under Section 10(b) of the Exchange Act***.  *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  Likewise, if either Touat or Marit is appointed Lead Plaintiff, he will presumably find himself litigating questions of loss causation in connection with the February 20 Disclosure (that is, the only disclosure in connection with which they incurred their claimed losses).  Literally any Lead Plaintiff that the Court appoints will foreseeably be forced to litigate questions of loss causation in connection with any and all corrective disclosures at issue.

## III.   THE *WAITS* COMPLAINT IS NOT THE PRODUCT OF "GAMESMANSHIP"

Finally, both movants claim that if the Court considers the October 24 Disclosure in assessing the competing movants' financial interest, it will be "tolerat[ing] or reward[ing]" purported "gamesmanship" by Waits' counsel simply because Waits filed his Complaint relatively late in the PSLRA's 60-day Lead Plaintiff notice period.  *See* Dkt. No. 38 at 8.

There is no merit whatsoever to the competing movants' aspersions.  As discussed at length *supra* at Section I, the October 24 Disclosure quite obviously relates to the core theory of fraud as

---

[4] Market data derived from Bloomberg Finance L.P. (last accessed on August 6, 2024).

alleged in both Complaints in this litigation. It is not an "alternate theory," nor has Waits "manufactured" an investment loss. *See* Dkt. No. 41 at 2, 7. Rather, like all other Class members, Waits incurred an investment loss as a consequence of the Defendants' fraud, and there is nothing artificial about his financial interest in the outcome of this litigation. Like the other Lead Plaintiff movants, Waits filed his Lead Plaintiff motion in response to the duly published notice of pendency of the first-filed *Stary* Action. Nothing in the Notice precluded him from doing so, nor expressly limited eligible Lead Plaintiff candidates to those who incurred losses only in connection with the February 20 Disclosure. However, given that the first-filed *Stary* Complaint unaccountably failed to allege the October 24 Disclosure, despite its obvious relevance to Defendants' alleged fraud, Waits opted to file his own Complaint to ensure that the theory of fraud in this litigation would do more than myopically focus on the single corrective disclosure alleged in the *Stary* Complaint. Moreover, contrary to the competing movants' suggestion that he deliberately waited to file his Complaint shortly before the expiration of the PSLRA's 60-day notice period in order to deprive other Class members of notice, Waits filed his Complaint promptly upon determining that his investment losses arising from the October 24 Disclosure were compensable under the theory of fraud in this litigation. And given that the *Waits* Complaint did not expand the Class definition or the Class Period, precisely the same group of investors—that is, all persons who purchased or otherwise acquired Teladoc stock between November 2, 2022 and February 20, 2024—were eligible to seek appointment as Lead Plaintiff after the filing of the *Waits* Complaint as before. The timing of the *Waits* Complaint thus raises no issues with respect to adequacy of notice to the Class. The Court should not credit the competing movants' disparagement of Waits' *bona fide* conduct in this litigation.

The cases that the competing movants cite in ostensible support of their accusations of "gamesmanship" are largely distinguishable. Many of these cases involved situations in which a later-filed complaint expanded the class period or class definition, thereby raising questions as to the adequacy of notice to class members who previously would not have been eligible to seek

8

appointment as lead plaintiff.[5] Here, as discussed above, adequacy of notice to the Class is not an issue because the *Waits* Complaint did not change the Class definition. In other cases, the partial disclosures at issue were found to be too far removed from the original theory of the alleged fraud to qualify as true partial corrective disclosures[6] or were even alleged in complaints filed ***after*** the expiration of the PSLRA lead plaintiff deadline, in apparent efforts to retroactively cure potential loss-causation issues.[7] Here, as discussed *supra*, the October 24 Disclosure in the *Waits* Complaint is plainly related to the same fraud as alleged in the *Stary* Complaint, and the *Waits* Complaint was filed ***before*** the PSLRA lead plaintiff motion deadline. In another case, the Court's concerns about "gamesmanship" were amplified by the fact that the plaintiff's Certification, which authorized the filing of his Complaint, was dated two weeks before the Complaint was actually filed on the last day of the 60-day PSLRA notice period—the implication being that plaintiff's counsel had deliberately waited until the eleventh hour to file the complaint in order to deprive other class members of notice.[8] Here, Waits' Certification is dated July 15, 2024, and the Complaint was filed that same day, reflecting the fact that Waits filed his Complaint promptly upon determining that the October 24 Disclosure related to the alleged fraud in this litigation.

---

[5] *See Villare v. ABIOMED, Inc.*, No. 19 CIV. 7319 (ER), 2020 WL 3497285, at *1 n.3, *5 (S.D.N.Y. June 29, 2020); *In re Centerline Holding Co. Sec. Litig.*, No. 08 CIV. 1026 (SAS), 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008); *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009); *Ragan v. AppHarvest, Inc.*, No. 21-CV-7985 (LJL), 2021 WL 5909116, at *2, *7-8 (S.D.N.Y. Dec. 13, 2021).

[6] *See Jiang v. Chirico*, No. 23 CIV. 1258 (PGG), 2024 WL 967084, at *5-9 (S.D.N.Y. Mar. 5, 2024); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011); *Lee v. iQIYI, Inc.*, No. 20CV1830LDHJO, 2020 WL 6146862, at *1-2 (E.D.N.Y. Oct. 20, 2020).

[7] *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 614-15 (S.D.N.Y. 2015); *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019).

[8] *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016).

## CONCLUSION

For the foregoing reasons, Waits respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Waits as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  August 6, 2024

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Andrew Waits and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for Andrew Waits*

10