UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| PAUL STARY, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 7:24-cv-03849-KMK |
|  | : | |
| Plaintiff, | : | <u>CLASS ACTION</u> |
|  | : | |
| vs. | : | REPLY MEMORANDUM IN FURTHER SUPPORT OF JOSHUA MARIT'S LEAD PLAINTIFF MOTION |
|  | : | |
| TELADOC HEALTH, INC., JASON NATHANIALL GOREVIC, and MALA MURTHY, | : | |
|  | : | |
| Defendants. | : | |

## I.      INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") establishes a presumption that the applicant with the largest financial interest, who also meets the requirements of Federal Rule of Civil Procedure 23, is the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii). As detailed in Joshua Marit's opposition brief (ECF 41 at 3-7), Andrew Waits should not be appointed lead plaintiff due to his reliance on an underdeveloped eleventh-hour proximate cause theory. This theory, necessary for Mr. Waits to prove damages, subjects him to unique loss causation defenses and raises serious concerns about whether he has any recoverable losses in this lawsuit.

Of the remaining lead plaintiff movants, only Mr. Marit satisfies the PSLRA's requirements. Under any loss calculation methodology proposed by the movants or used by courts in this District, including the "DURA LIFO" method Ali Touat advocates, Mr. Marit has the largest financial interest:

| Movant | Total Shares Purchased | Net Shares Purchased | Net Funds Expended | LIFO Loss | FIFO Loss | DURA LIFO Recoverable Loss |
|---|---|---|---|---|---|---|
| Mr. Marit | **123,852** | 9,671 | **$216,786** | **$163,418** | **$167,673** | **$104,357** |
| Mr. Touat | 10,412 | **10,412** | $213,966 | $67,130 | $67,130 | $67,130 |
| ~~Mr. Waits~~ | ~~210,500~~ | ~~0~~ | ~~$310,050~~ | ~~$310,050~~ | ~~$310,050~~ | ~~GAIN of $80,835~~ |

Notably, while Mr. Touat ***purports*** to use the *Dura* LIFO (last-in, first-out) methodology, he applied that methodology incorrectly when arriving at a loss figure that conveniently depresses Mr. Marit's recoverable loss. Under the proper application of Mr. Touat's own methodology – which requires movants to match the last shares purchased (the "last in" shares) to the first shares sold (the "first out" shares), and exclude pre-disclosure losses – Mr. Marit plainly possesses the largest financial interest. Mr. Marit's motion for appointment as lead plaintiff should be granted.

4884-1752-9558.v1

## II.    ARGUMENT

### A.    Mr. Marit Has the Largest Financial Interest of Any Qualified Movant

After Mr. Waits is removed from consideration, the primary issue before the Court is which of the remaining movants possesses the largest financial interest.  "[T]he PSLRA does not indicate how to calculate which plaintiff has the 'largest financial interest.'" *Husson v. Garrett Motion Inc.*, 2021 WL 211541, at *2 (S.D.N.Y. Jan. 21, 2021).[1]  To make this determination, most courts in this Circuit look to the "*Olsten-Lax*" factors: "'(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered.'" *Goldenberg v. NeoGenomics, Inc.*, 2023 WL 6389101, at *3 (S.D.N.Y. Oct. 2, 2023).  "'Consistent with other courts in this Circuit, [courts in this District] place the greatest emphasis on the approximate loss suffered by the movant.'" *Id.*; *see Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 475-76 (S.D.N.Y. 2011) ("[A] trend seems to be emerging that the *Lax* factors are properly ordered, so that the number of shares purchased (Factor 1) is the least important and the loss suffered (Factor 4) is the most important.").[2]

Here, applying the four-factor *Olsten-Lax* factors criteria, it is clear that Mr. Marit prevails under three of the four *Olsten-Lax* factors, including the two most important metrics (net funds expended and approximated loss):

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted.

[2]    To calculate the approximate losses sustained by a proposed lead plaintiff in securities class actions, courts typically use one of two methodologies: first-in-first-out ("FIFO") or last-in-first-out ("LIFO").  Under FIFO, stocks acquired first are matched to the first sales, whereas the LIFO methodology "assumes that the last stocks to be sold are the stocks purchased most recently ***prior to that sale***." *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010).

4884-1752-9558.v1

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Losses |
|---|---|---|---|---|
| **Mr. Marit** | **123,852** | 9,671 | **$216,786** | **$167,673 (FIFO)/ $163,418 (LIFO)** |
| Mr. Touat | 10,412 | **10,412** | $213,966 | $67,130 (FIFO/LIFO) |

Notably, even if the Court chooses to apply Mr. Touat's "DURA LIFO" approach to gauge the movants' financial interests, Mr. Marit would still possess the largest financial interest.  As background, some courts in this District require movants to adjust their LIFO loss calculations to remove any losses arising from securities that were bought and sold before the corrective disclosure of the alleged fraud, while other courts do not.  *Compare, e.g.*, *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) ("following the Supreme Court's decision in *Dura* . . . , courts in this district ordinarily will not include losses that occurred prior to the first corrective disclosure of the alleged fraudulent misrepresentation made by the defendant") *with Cook v. Allergn PLC*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (declining to adjust movants' losses, finding that "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute").  Those courts that elect to undertake this analysis at the lead plaintiff stage "apply *Dura* to adjust **LIFO** calculations by removing any losses arising from securities bought and sold before the defendant's corrective disclosure." *Skeels v. Piedmont Lithium Inc.*, 2022 WL 1236797, at *4 (E.D.N.Y. Feb. 4, 2022).  Critically, Mr. Touat agreed in his opening motion – before he knew that Mr. Marit's financial interest was larger than his own – that this "DURA **LIFO**" methodology is applied by "[d]isregarding losses not attributable to the alleged fraud from intra-class period sales made prior to any corrective disclosure matched to intra-class period purchases." ECF 18-2 at 2.  When Mr. Marit's LIFO losses are adjusted according to Mr. Touat's own preferred methodology to remove any losses arising from securities bought and

- 3 -

sold before Teladoc Health, Inc.'s February 20, 2024 corrective disclosure, Mr. Marit's recoverable loss is $104,357.29 - more than 50% larger than Mr. Touat's:

| Movant | Recoverable Loss Under DURA LIFO Methodology |
|---|---|
| Mr. Marit | **$104,357** |
| Mr. Touat | $67,130 |

Thus, Mr. Touat's claim that applying the DURA LIFO method would reduce Mr. Marit's loss to $56,345 is unfounded and mistaken.  The chart provided by Mr. Touat purporting to present an accurate calculation of the DURA LIFO methodology (ECF 39-2) reveals a misapplication of the DURA LIFO method, as it fails to match the last shares sold with the most recently purchased shares, as required.  *See City of Monroe*, 269 F.R.D. at 295.  Instead, Mr. Touat uses an arbitrary and self-serving matching sequence to artificially decrease Mr. Marit's losses.  *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (requiring a rational and consistent methodology).  A correct and accurate calculation of Mr. Marit's losses using the DURA LIFO analysis employed by courts in this District demonstrates that "apply[ing] Dura to adjust *LIFO* calculations by removing any losses arising from securities bought and sold before the defendant's corrective disclosure" results in $104,357 in recoverable losses.  *Skeels*, 2022 WL 1236797, at *4; Declaration of David A. Rosenfeld in Support of Reply Memorandum in Further Support of Joshua Marit's Lead Plaintiff Motion, Ex. A, submitted concurrently herewith.  Accordingly, there is no basis in law or fact to find that Mr. Touat has a larger financial interest than Mr. Marit, no matter which metric or methodology Mr. Touat urges the Court to adopt.

4884-1752-9558.v1

### B.      The Presumption in Mr. Marit's Favor Remains Unrebutted

Pursuant to the PSLRA, Mr. Marit's presumptive status can be rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."   15 U.S.C. §78u-4(a)(3)(B)(iii)(II).   None of the competing movants have even attempted to timely offer such proof here.[3]

Mr. Waits acknowledges his susceptibility to unique loss causation defenses, "[a]nticipating . . . potential argument[s]" against his adequacy.   ECF 40 at 4.   While he claims his eleventh-hour complaint did not prejudice potential class members, the crucial issue is his trading pattern – selling all shares before the February 20, 2024 corrective disclosure – which defendants will argue hinders his ability to prove damages from the alleged misconduct.   Mr. Waits' last-minute complaint and underdeveloped proximate cause theory are nothing more than failed attempts to overcome this fundamental flaw in his candidacy.

---

[3]    Mr. Touat argues – for the very first time in his reply brief – that Mr. Marit is an "in-and-out" trader subject to unique defenses.   ECF 43 at 1-4.   Like with his incorrect DURA LIFO calculations, Mr. Touat simply gets his facts wrong.   A movant who, like Mr. Marit, "purchased shares before, and retained them after" a corrective disclosure is not an "in-and-out" trader.   *Moshell v. Sasol Ltd.*, 2020 WL 2115410, at *2 n.2 (S.D.N.Y. May 4, 2020); *see also Sklar v. Amarin Corp. PLC,* 2014 WL 3748248, at *9 n.8 (D.N.J. July 29, 2014) ("In-and-out traders are those who both purchase and sell ***all*** of their shares prior to a corrective disclosure . . . .").   Mr. Marit's DURA LIFO calculation clearly shows that he suffered the most losses of any movant on precisely those shares that were purchased prior and held through, the February 20, 2024 corrective disclosure.   Mr. Touat likewise belatedly (and incorrectly) suggests that the volume of Mr. Marit's trading gives rise to unique defenses; it does not.   *Perez v. HEXO Corp.*, 2020 WL 905753, at *4 (S.D.N.Y. Feb. 25, 2020) ("Second, Wong argues that Medley is atypical of other class members because he allegedly day-traded HEXO stock. . . .   Medley disputes this characterization. . . .   The dispute is immaterial, however, in light of the fact that 'the prevailing view in this Circuit is that "day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.'").

4884-1752-9558.v1

## III.    CONCLUSION

Because Joshua Marit possesses the largest financial interest, satisfies the Rule 23 requirements, and no one has rebutted the presumption that he is the most adequate plaintiff, Mr. Marit respectfully requests that the Court appoint him as Lead Plaintiff and approve his selection of Lead Counsel.

DATED:  August 6, 2024                          Respectfully submitted,

                                                                        *s/ David A. Rosenfeld*
                                                                        DAVID A. ROSENFELD

                                                                        ROBBINS GELLER RUDMAN
                                                                          & DOWD LLP
                                                                        SAMUEL H. RUDMAN
                                                                        DAVID A. ROSENFELD
                                                                        58 South Service Road, Suite 200
                                                                        Melville, NY  11747
                                                                        Telephone:  631/367-7100
                                                                        srudman@rgrdlaw.com
                                                                        drosenfeld@rgrdlaw.com

                                                                        ROBBINS GELLER RUDMAN
                                                                          & DOWD LLP
                                                                        JENNIFER N. CARINGAL
                                                                        JUAN CARLOS SANCHEZ
                                                                        655 West Broadway, Suite 1900
                                                                        San Diego, CA  92101
                                                                        Telephone:  619/231-1058
                                                                        jcaringal@rgrdlaw.com
                                                                        jsanchez@rgrdlaw.com

                                                                        Proposed Lead Counsel for Proposed Lead Plaintiff

4884-1752-9558.v1