PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

AUDRA J. SOLOWAY

DIRECT DIAL:  +1 212 373 3289
EMAIL:  ASOLOWAY@PAULWEISS.COM

BRUSSELS
HONG KONG
LONDON
LOS ANGELES
SAN FRANCISCO

TOKYO
TORONTO
WASHINGTON, DC
WILMINGTON

March 26, 2025

**By Email**

Michael G. Capeci
Robbins, Geller, Rudman & Dowd, LLP
58 South Service Road, Suite 200
Melville, NY 11747
mcapeci@rgrdlaw.com

Shannon Hopkins
Levi & Korsinsky, LLP
1111 Summer Street, Suite 403
Stamford, CT 06905
shopkins@zlk.com

*Stary* v. *Teladoc Health, Inc., et al.*, No. 7:24-cv-3849 (S.D.N.Y.)

Dear Mr. Capeci and Ms. Hopkins:

We represent defendants Teladoc Health, Inc. ("Teladoc"), Jason Gorevic, and Mala Murthy in the above-referenced action, and write pursuant to Judge Kenneth M. Karas's Individual Rules to describe the bases for Defendants' anticipated motion to dismiss the Amended Complaint ("Complaint") filed by lead plaintiffs Joshua Marit and Ali Touat ("Plaintiffs").

**Relevant Background**. Teladoc is a global leader in virtual healthcare, offering a broad portfolio of integrated products and services. As relevant here, Teladoc generates revenue from BetterHelp, a direct-to-consumer online mental health platform that provides online counseling and therapy via a network of licensed clinicians. BetterHelp primarily generates revenue from paying users who pay a weekly or monthly fee to access its network of clinicians, as well as its BetterSleep app designed to help people improve their sleep quality and overall well-being.

Plaintiffs assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and allege that Defendants fraudulently misrepresented aspects of BetterHelp's business between July 26, 2023, and February 20, 2024 (the "Class Period"). (¶ 1.)[1] Plaintiffs' allegations principally concern "ad spend yield," which measures the effectiveness of Teladoc's advertising

---

[1]    References to "¶" refer to paragraphs in the Complaint.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Mr. Capeci and Ms. Hopkins                                                    2

expenditures, and "customer acquisition cost" (or "CAC"), which measures the amount the Company spends to acquire a new customer.  (¶¶ 60, 63–64, 67.)

Teladoc does not publicly report ad spend yield or CAC.  Its executives do, however, publicly provide some directional and aspirational updates on these measures, which Plaintiffs now challenge, such as Gorevic's statement in July 2023 that "[w]e've also seen stable [CAC] through the first half of the year" (¶ 179), and Murthy's statement in October 2023 that "scale enables us to drive and earn strong returns on our [ad] spend, and that gives us a real advantage" (¶ 189.)  Plaintiffs allege that these and similar statements misled investors, not because they were literally false, but because they purportedly concealed Defendants' supposed knowledge, beginning in July 2023, that ad spend yield was decreasing, and CAC commensurately increasing, in the second half of 2023.  (*See, e.g.*, ¶¶ 180, 190.)  Plaintiffs, however, plead no facts describing *what* contradictory information Defendants learned during the Class Period, *when* they learned it, *who* learned it, or *why* they would conceal such information.

Plaintiffs also admit that investors were promptly updated during quarterly earnings calls about deteriorating ad spend yield—including an update just three months after the alleged fraud began.  To that end, the Complaint alleges that the purported truth was revealed in two "corrective" disclosures: October 24, 2023, when Murthy described a "modest deterioration" in ad spend yield in 3Q23 that was "likely to persist" through 4Q23, and on February 20, 2024, when Gorevic disclosed "returns on our social media advertising spend that were below target in the second half of [2023]."  (¶¶ 136, 142, 155, 165, 213–16.)

Plaintiffs thus attempt to engineer a fraud theory from historically accurate statements by faulting Defendants' failure to predict future deterioration (in metrics the Company does not publicly report), notwithstanding Defendants' prompt disclosure that ad effectiveness had declined during quarterly earnings calls.  This fraud theory makes no sense, is unsupported by any well-pleaded facts, and comes nowhere near meeting the exacting standards of the Private Securities Litigation Reform Act of 1995 or Federal Rule of Civil Procedure 9(b) for pleading materially false statements, a strong inference of scienter, or loss causation.  The Complaint should be dismissed with prejudice.

**No False or Misleading Statements**.  While the Complaint spills much ink on purported calculations of advertising spend yield and CAC, which Teladoc does not actually report, the Complaint does not actually identify ***any*** false financial information.  Instead, nearly every alleged misstatement reports qualitatively on historical trends not alleged to be false.  (*E.g.*, ¶ 179 ("We've also seen stable customer acquisition costs through the first half of the year."); ¶ 193 ("We always pull back on ad spend for BetterHelp at this time of the year in 4Q23."); *see also* ¶¶ 181, 185, 187, 189, 195, 197.)  Plaintiffs' theory is that factually accurate statements somehow misled investors because they failed to disclose later deterioration in the second half of 2023.  (*See* ¶¶ 8–9.)

Making accurate statements about historical trends in ad spend and CAC did not create an affirmative duty for Defendants to disclose all information about those topics, much less obligate Teladoc to predict the future.  *See Dalberth* v. *Xerox Corp.*, 766 F.3d 172, 183 (2d Cir. 2014) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.").  Nor does historically accurate information somehow become

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Mr. Capeci and Ms. Hopkins                                                                  3

misleading if future performance does not repeat the past.  *See Wilbush* v. *Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 485, 489 (S.D.N.Y. 2017) (rejecting plaintiff's argument that "[a]ccurate statements about past performance" were misleading when subsequent performance deteriorated).

Moreover, Plaintiffs' fraud theory suffers fatal temporal defects.  Three challenged statements were made between July 26 and July 28, 2023.  (¶¶ 179–84.)  But Plaintiffs plead no facts showing that CAC had materially increased since July 1, 2023.  Plaintiffs rely on Defendants' purported "admission" in February 2024 that they "started observing" lower yields "than . . . expected in the back half of [2023]," to imply that that such declines necessarily "had begun by July 1, 2023."  (¶¶ 158–59.)  No well-pleaded facts support this inference.  *See In re Riskified Ltd. Sec. Litig.*, 2023 WL 3791653, at *8 & n.7 (S.D.N.Y. June 2, 2023) (dismissing claims where plaintiffs alleged no facts showing that 3Q declines had begun, or that defendants were aware of such declines, when issuer IPOed in late July).  Every other alleged misstatement was made on or after October 24, 2023 (¶¶ 185–98), the date on which Plaintiffs admit that Murthy disclosed the "modest deterioration" in ad spending yield, a "trend[]" that she warned was "likely to persist . . . through [4Q23]."  (¶ 136.)  Defendants cannot be liable for concealing the very trend that was disclosed in this purported "corrective disclosure."  *See In re Barclays PLC Sec. Litig.*, 2024 WL 757385, at *15 (S.D.N.Y. Feb. 23, 2024).

Certain challenged statements are non-actionable for additional reasons.  For example, Gorevic's opinion that he did not "think there's any scenario where we believe" BetterHelp would "shrink" in 2024 (¶ 197) is not accompanied by allegations that he subjectively disbelieved this opinion or had "actual knowledge" of its falsity.  *See Frankfurt-Tr. Inv. Luxemburg AG* v. *United Techs. Corp.*, 336 F. Supp. 3d 196, 227 (S.D.N.Y. 2018).  Other statements, such as that BetterHelp's "scale" gives the Company "a real advantage" (¶ 189), are non-actionable puffery. *See Okla. Firefighters Pension & Ret. Sys.* v. *Xerox Corp.*, 300 F. Supp. 3d 551, 569 (S.D.N.Y. 2018).

**No Strong Inference of Scienter**.  To survive a motion to dismiss, Plaintiffs must plead particularized facts raising a strong inference of scienter by alleging "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *See ECA & Loc. 134IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) (citation omitted).  Plaintiffs do not even attempt to plead motive; accordingly, "the strength of the circumstantial allegations must be correspondingly greater."  *Id.* at 198–99.  And Plaintiffs' "circumstantial allegations" plead no specific facts identifying contemporaneous information known to Gorevic and Murthy that contradicted their challenged statements: no meetings, no phone calls, no internal reports.  Indeed, Plaintiffs offer zero explanation for why Defendants would make false statements, only to promptly disclose the deterioration in ad spend yield during quarterly earnings calls during the Class Period.  *See Johnson* v. *Siemens AG*, 2011 WL 1304267, at *19 (E.D.N.Y. Mar. 31, 2011) (granting motion to dismiss where "[t]he amended complaint suggests no reason for [the defendant's] management to have concealed the costs of the legacy projects in November 2007, and to have fraudulently announced only a fraction of those costs in January 2008, only to disclose their full magnitude just several weeks later in March 2008").  Rather than offer any coherent scienter theory, Plaintiffs rely on unrelated and irrelevant conduct and statements, which fall well short of the requisite strong inference:

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Mr. Capeci and Ms. Hopkins                                                                4

*First*, Plaintiffs insist that Defendants were "constantly and carefully monitoring BetterHelp's ad spend yield and related [CAC] in the social media channel at all relevant times during 3Q23 and 4Q23," relying on Murthy's supposed "admission" in November 2022 that Defendants look at these metrics "hourly and daily." (¶¶ 117, 205.) But allegations that defendants "monitored" key metrics are inadequate where, as here, the Complaint does not plead that the metrics declined as early as July 2023. *See Cox* v. *Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016). And Plaintiffs badly misconstrue Murthy's supposed "admission" (¶ 205), which actually addressed a different metric—the *allocation* of ad spending across different channels during the fourth quarter of 2022. (Ex. A, Piper Sandler Annual Healthcare Conf. Tr. at 11 (Nov. 30, 2022).)[2] Moreover, as the Complaint admits, since ad spend yield and CAC are backward looking (*i.e.* they assess effectiveness of past ad spending decisions), customer numbers "lag" an entire quarter behind changes in "ad spend." (¶¶ 74–75.) Such effectiveness plainly cannot be monitored "hourly and daily."

*Second*, Plaintiffs point to the Company's entry into an FTC consent order before the start of the Class Period, resolving allegations that it improperly shared customer health data with third parties *between 2013 and 2020*. (¶¶ 102, 110–14, 207.) This pre-Class Period consent order concerning unrelated conduct—none of which is alleged to involve Gorevic or Murthy— contributes nothing to scienter. *See Rotunno* v. *Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022) (holding that "[t]he complaint's references to an unrelated SEC investigation and the resignations of executives d[id] not add to the plausibility of the scienter allegations" because the investigation "concern[ed] unrelated conduct that occurred prior to the [c]lass [p]eriod").

*Finally*, Plaintiffs allege that Defendant Gorevic was terminated as CEO approximately six weeks after the February 2024 corrective disclosure, which an analyst speculated was the result of BetterHelp underperformance. (¶¶ 173, 208.) Courts routinely reject such allegations where, as here, Plaintiffs plead no facts connecting an executive departure to the alleged securities fraud. *See In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 559 (S.D.N.Y. 2024).

Taken holistically, the far more compelling inference is that Defendants had no motive to lie, promptly identified the third quarter and fourth quarter deterioration in the effectiveness of advertising spend, and shared that information with investors on the next quarterly earnings calls. Even assuming an adequately-pleaded misstatement (none exist), the Complaint does not plead a strong inference of fraudulent intent by any Defendant.

**No Loss Causation**. Plaintiffs fail to plead loss causation because the alleged corrective disclosures "did not reveal to the market or otherwise establish that the prior representations had been false." *In re Omega Heathcare Invs. Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 267 (S.D.N.Y. 2021). As Lead Plaintiffs argued, and the Court accepted, at the lead plaintiff appointment stage, Murthy's October 24, 2023 statement describing ad spend deterioration did not reveal the falsity of any prior statement and "does not constitute a corrective disclosure." Nov. 14, 2024 Hearing Tr. at 36:24–25; *see also id.* at 8:16–20; 9:2–5. And, given Murthy's warning that this "trend[]"

---

[2] To the extent the Complaint quotes, cites, or references a document, that document is considered part of the Complaint. *See Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *In re Diebold Nixdorf Inc. Sec. Litig.*, 2021 WL 1226627, at *10 n.14 (S.D.N.Y. Mar. 30, 2021).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Mr. Capeci and Ms. Hopkins                                                    5

was "likely to persist . . . through [4Q23]," the later February 2024 alleged corrective disclosure does not reveal any previously concealed information. *See City of Omaha Police and Firefighters Ret. Sys.* v. *Cognyte Software Ltd.*, 2024 WL 4349289, at *9 (S.D.N.Y. Sept. 30, 2024) ("Plaintiff cannot now point to the materialization of those known risks to show loss causation.").

For these reasons, the Complaint fails to state a claim as a matter of law, and certainly does not satisfy the heightened pleading standards of the PSLRA and Rule 9(b).

Respectfully,

*/s/ Audra J. Soloway*

Audra J. Soloway

cc:   Hon. Kenneth M. Karas (via ECF)
      United States District Court
      Southern District of New York
      The Hon. Charles L. Brieant Jr.
      Federal Building and Courthouse
      300 Quarropas Street
      White Plains, New York 10601-4150

      Samuel H. Rudman, Esq. (via email)
      Natalie C. Bono, Esq. (via email)
      Gregory Potrepka, Esq. (via email)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP