UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

PAUL STARY, Individually and on Behalf of   :   Civil Action No. 7:24-cv-03849-KMK
All Others Similarly Situated,
                                            :
                              Plaintiff,         PLAINTIFFS' MEMORANDUM OF LAW
                                            :    IN OPPOSITION TO DEFENDANTS'
                                                 MOTION TO DISMISS
       vs.                                  :

TELADOC HEALTH, INC., JASON                 :
NATHANIALL GOREVIC, and MALA
MURTHY,                                     :

                              Defendants.   :

———————————————————————— x

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT...................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................................. 5

    A.    BetterHelp's Financial Performance in FY23 Was Material to Investors.......................... 5

    B.    CAC Was Key to BetterHelp's FY23 Financial Performance ........................................... 5

    C.    Defendants' Ability to Purposely Manipulate BetterHelp's Ad Spend in FY23 (to Ensure Predictable Revenue, Profit, and Paying User Performance) Relied on Stable CACs ....... 5

    D.    Defendants Immediately Knew When BetterHelp's CACs Temporarily Increased in the Social Media Channel During 1H22 ................................................................................ 6

    E.    Defendants Also Immediately Knew When BetterHelp's CAC Increased in the Social Media Channel Starting July 1, 2023, Because BetterHelp Had Saturated That Channel . 6

    F.    Teladoc's FTC Settlement in July 2023 Further Demonstrates Defendants' Monitoring of BetterHelp's Social Media CAC.................................................................................. 7

    G.    Defendants Mislead Investors Regarding BetterHelp's CAC and Expected Seasonality in July 2023 ........................................................................................................................ 8

    H.    In October 2023, After Partially Revealing the Truth, Defendants Continue Deceiving Teladoc's Investors Through February 2024 ................................................................... 9

III.   ARGUMENT ............................................................................................................... 10

    A.    The AC Adequately Alleges Material Misrepresentations.............................................. 10

        1.    July 2023 .................................................................................................................. 10

        2.    October 2023.............................................................................................................. 14

        3.    November 2023 and January 2024 ......................................................................... 16

    B.    The AC Adequately Alleges Scienter.............................................................................. 19

        1.    Defendants Admittedly Knew CACs Increased By July 1, 2023 ................................ 20

        2.    The FTC Order Supports Scienter .............................................................................. 23

        3.    The Core Operation Doctrine Supports Scienter ........................................................ 23

        4.    Gorevic's Firing Supports Scienter ............................................................................ 24

        5.    Plaintiffs' Scienter Inference is at Least as Strong as Defendants' Competing Inference .................................................................................................................... 24

    C.    The AC Adequately Alleges Loss Causation .................................................................. 25

        1.    The October 2023 Partial Corrective Disclosure......................................................... 25

        2.    The February 2024 Corrective Disclosure................................................................... 27

IV.     CONCLUSION.................................................................................................... 28

**TABLE OF AUTHORITIES**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020) ................................................................. 16, 18, 25, 26

*Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc.*,
2022 WL 784017 (S.D.N.Y. Mar. 15, 2022) ...............................................................11

*Boston Ret. Sys. v. Alexion Pharms., Inc.*,
556 F. Supp. 3d 100 (D. Conn. 2021) ................................................................. 26, 27

*Citiline Holdings, Inc. v iStar Fin., Inc.*,
701 F. Supp. 2d 506 (S.D.N.Y. 2010) ........................................................................ 15

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
2024 WL 4349289 (S.D.N.Y. Sept. 30, 2024) ........................................................... 28

*City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*,
875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012) ............................................................... 19

*City of Sterling Heights Police & Fire Retirement Sys. v. Reckitt Benckiser Group PLC*,
587 F. Supp. 3d 56 (S.D.N.Y. 2022) ......................................................................... 20

*Cox v. Blackberry Ltd.*,
660 F. App'x 23 (2d Cir. 2016) ................................................................................. 22

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)................................................................................................... 25

*Freudenberg v. E*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ................................................................. 25, 26

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282 (S.D.N.Y. 2018) ....................................................................... 12

*In re Avon Sec. Litig.*,
2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ........................................................... 23

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ..................................................... 23, 28

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.*,
986 F. Supp. 2d 487, 515-16 (S.D.N.Y. 2013) ......................................................... 14

*In re Ferroglobe PLC Sec. Litig.*,
2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020) ............................................................11

*In re Focus Media Holding Ltd. Litig.*,
701 F. Supp. 2d 534 (S.D.N.Y. 2010) ....................................................................... 12

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) .............................................................. 22

*In re MBIA, Inc. Sec. Litig.*,
700 F. Supp. 2d 566, 581 (S.D.N.Y. 2010) (Karas, J.)...............................................11

iv

*In re Nielsen Holdings PLC Sec. Litig.,*
  510 F. Supp. 3d 217 (S.D.N.Y. 2021) .......................................................... 17, 21

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) (Karas, J.)......................................11, 19, 22, 23

*In re OSG Sec. Litig.*,
  12 F. Supp. 3d 622 (S.D.N.Y. 2014) ......................................................................... 24

*In re Ply Gem Holdings, Inc.*,
  2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016) ........................................................... 18

*In re Riskified Ltd. Sec. Litig.*,
  2023 WL 3791653 (S.D.N.Y. June 2, 2023) ...............................................................11

*In re Salix Pharms., Ltd.,*
  2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016)........................................ 15, 17, 18, 22

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ...................................................... 16, 18

*In re Virtu Fin., Inc. Sec. Litig.*,
  770 F. Supp. 3d 482 (E.D.N.Y. 2025) ....................................................................... 22

*Macovski v. Groupon, Inc.*,
  553 F. Supp. 3d 460 (N.D. Ill. 2021) ........................................................................ 20

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
  15 F. Supp. 3d 336 (S.D.N.Y. 2014) ................................................................... 15, 28

*Moradpour v. Velodyne Lidar, Inc.*,
  2022 WL 2391004 (N.D. Cal. July 1, 2022)............................................................... 19

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000) ...................................................................................... 19

*Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) ......................................................................... 23

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018) ....................................................................... 14

*Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*,
  2019 WL 2360942 (S.D.N.Y. Mar. 4, 2019) ............................................................. 22

*Rein v. Dutch Bros, Inc.*,
  2024 WL 3105004 (S.D.N.Y. June 24, 2024) .............................................................11

*Rotunno v. Wood*,
  2022 WL 14997930 (2d Cir. Oct. 27, 2022) ............................................................. 23

*Schiro v. Cemex, S.A.B. de C.V.*,
  396 F. Supp. 3d 283 (S.D.N.Y. 2019) ....................................................................... 24

*Set Capital LLC v. Credit Suisse Group AG*,
  996 F.3d 64 (2d Cir. 2021) ................................................................................... 15, 19

*Skiadas v. Acer Therapeutics Inc.*,
  2020 WL 3268495, at *7 (S.D.N.Y. June 16, 2020) ..................................................11

v

*Stadium Capital LLC v. Co-Diagnostics, Inc.*,
   2024 WL 456745 (S.D.N.Y. Feb. 5, 2024) ................................................................... 13, 21, 23

*Stadnick v. Vivint Solar, Inc.*,
   861 F.3d 31 (2d Cir. 2017) ................................................................................................ 12

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
   531 F.3d 190 (2d Cir. 2008) .............................................................................................. 22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308, 323-26 (2007) ............................................................................................. 19

*Villare v. Abiomed, Inc.*,
   2020 WL 3497285 (S.D.N.Y. June 29, 2020) .................................................................... 26

*Yannes v. SCWorx Corp.*,
   2021 WL 2555437 (S.D.N.Y. June 21, 2021) .................................................................... 24

Lead Plaintiffs Joshua Marit and Ali Touat (together, "Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendants' motion to dismiss the Amended Complaint ("AC") (ECF 60).[1]

## I.   PRELIMINARY STATEMENT

This case centers on Defendants' false and misleading misrepresentations concerning BetterHelp, one of Teladoc's two business segments.  Investors were told BetterHelp would be the Company's primary growth driver in FY23.  Because BetterHelp relies heavily on advertising to attract users, Defendants "constantly" monitored BetterHelp's customer acquisition costs ("CAC") (*i.e.*, total ad spending / number of new customers) on an "hourly and daily" basis before and during the Class Period.  Higher CAC means lower ad spending yield and, consequently, lower profit and paying user growth.

Before and during the Class Period, Defendants repeatedly emphasized that BetterHelp seasonally manipulated ad spending to ensure predictable revenue, adjusted EBITDA (*i.e., profit*) and paying user results.  Indeed, BetterHelp previously struggled in the first half of FY22 ("1H22") with temporary competition-driven CAC increases in the social media channel, which caused BetterHelp to deviate from its planned seasonality and underperform.  In combatting this temporary CAC increase, Defendants repeatedly represented they could quickly discern when CAC increased in specific advertising channels.  Indeed, in November 2022 Murthy told investors

---

[1] The AC alleges claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all purchasers of the common stock of Teladoc Health, Inc. ("Teladoc" or the "Company") from July 26, 2023 to February 20, 2024, inclusive (the "Class Period").  "Defendants" refers to Teladoc, former CEO Jason Gorevic ("Gorevic"), and current CFO Mala Murthy ("Murthy," and with Gorevic, the "Individual Defendants").  "¶_" refers to paragraphs in the AC.  "DB" refers to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Class Action Complaint, dated June 20, 2025.  ECF 70.  "Ex. _" references to numerical exhibits are to the Declaration of Audra Soloway, dated June 20, 2025.  ECF 71.  "Ex. __" references to alphabetical exhibits are to the accompanying Declaration of Shannon L. Hopkins, dated August 6, 2025.  Unless otherwise noted, all emphasis in quotations is added and all internal citations and quotation marks are omitted.  All undefined capitalized terms have the same meanings used in the AC.

that BetterHelp's return to planned seasonality was essential, and that BetterHelp was careful not to make unprofitable advertising expenditures—*i.e.*, to minimize CAC. Emphasizing this point, Murthy stated that Defendants "look at this hourly and daily," with "this" meaning BetterHelp's ad spending yield (which is measured using CAC).

Keeping CAC low in the social media channel was so important to Teladoc that it allegedly used false pretenses to steal confidential health information from BetterHelp's customers (individuals seeking mental health treatment) to give to social media companies in exchange for more effective ads, thereby lowering BetterHelp's CAC. Just days before the Class Period began, the FTC fined the Company $7.8 million for this alleged scheme. Teladoc's allegedly illegal tactics to lower CAC demonstrate Defendants were highly attuned to BetterHelp's social media channel CAC by July 2023.

Thus, by the Class Period's start, Defendants had conditioned investors to expect certainty in BetterHelp's 3Q23 and 4Q23 performance. However, unbeknownst to investors, and as Defendants would admit for the first time at the end of the Class Period, saturation in the social media channel resulted in materially increased CAC beginning July 1, 2023.

To conceal this from investors, Defendants misleadingly stated in July 2023 that CAC was "stable" and BetterHelp's planned seasonal "cadence" was unchanged—falsely reassuring continuity of planned seasonality. The reason Defendants made these misrepresentations is because if CAC materially increases (here, by saturating the social media advertising channel) then BetterHelp will deviate from planned seasonality, meaning compressed ad spend yield, user growth, revenue and profit in the ensuing quarter. That is precisely what occurred (but was not disclosed) during the Class Period. Indeed, after misleading investors in July 2023 about BetterHelp's CAC and planned seasonality, the material CAC increase in the social media channel

2

caused BetterHelp's profit and paying user metrics to decline in 3Q23. This forced Defendants to partially disclose a "modest deterioration" in ad spend yield in October 2023, causing Teladoc's stock to decline.

However, in October 2023, Defendants simultaneously made misrepresentations concealing that CAC had *materially* (not "modestly") increased, that the cause was BetterHelp's saturation of the social media channel, and that BetterHelp's planned seasonality had been derailed. Defendants' misstatements were designed to mask the extent of BetterHelp's CAC deterioration. For example, Defendants stated in October 2023 that BetterHelp was experiencing a "more stable advertising environment compared to [FY22]," which was misleading because the social media channel saturation was structurally increased, unlike the temporary CAC fluctuation in FY22.

These statements, and similar ones made in November 2023 and January 2024, are why investors were stunned to learn at the end of the Class Period in February 2024 that BetterHelp could no longer profitably ad spend in the social media channel, meaning, *inter alia*, that BetterHelp was not Teladoc's main profit driver. This newly disclosed information caused an approximate 24% decline in Teladoc's stock price, shocking numerous analysts, and resulted in Gorevic's firing. In February 2024, Defendants admitted that "[w]e had actually started observing the yields coming in lower than we had expected in the back half of the year," *i.e.*, by July 1, 2023, before the Class Period began, and confirmed that Defendants had been "constantly looking at the marginal return" on BetterHelp's ad spend (*i.e.*, CAC), during the Class Period.

In their pre-motion letter, Defendants' main argument was that Plaintiffs' claims must fail because Teladoc never publicly reported specific CAC figures and thus Plaintiffs had "engineer[ed]" a fraud. Recognizing Plaintiffs' convincing rebuttal of this argument during the pre-motion conference, Defendants pivoted to a new leading argument—that the fraud is

3

"illogical" because Defendants supposedly disclosed BetterHelp's materially increased CAC in July 2023 by guiding to second half FY23 ("2H23") revenue deceleration, and implying in April 2023 the possibility of 2H23 CAC deterioration.

Defendants' newly-minted argument is even less compelling. Defendants' revenue deceleration comment in July 2023 compared expected 3Q23 revenue to 3Q22 revenue for BetterHelp, and noted that "the revenue comps line up differently" because of BetterHelp's temporary CAC increase in 1H22. This statement communicated ***nothing*** about BetterHelp's 2H23 materially increased CAC or impaired planned seasonality. Instead, this comment was designed to reinforce the false notion that BetterHelp's planned seasonality was intact. Likewise, Defendants' CAC deterioration comment in April 2023 merely acknowledged that BetterHelp's guidance accounted for the ***possibility*** of CAC increasing, ***not*** that CAC ***had*** materially increased. Indeed, Defendants later admitted that the material CAC increase began on July 1, 2023, making it impossible for Defendants to have disclosed this information in April 2023. At best, Defendants' new argument comprises an impermissible truth-on-the-market defense that cannot be resolved at this juncture.

The remainder of Defendants' motion relies on distorting Plaintiffs' plausible interpretation of Defendants' post-Class Period admissions and rejecting the facts alleged. As to scienter, Defendants primarily focus on motive, even though the AC contains no motive allegations. And for loss causation, Defendants wholly ignore the obvious links between their alleged misstatements and the corrective disclosures. At bottom, Defendants advance the precise type of factual arguments that require discovery to resolve. Accordingly, and as described below, Plaintiffs respectfully request Defendants' motion be denied.

## II.    STATEMENT OF FACTS

### A.  BetterHelp's Financial Performance in FY23 Was Material to Investors

BetterHelp is Teladoc's direct-to-consumer mental health business, and one of the Company's two reporting segments.  ¶¶30-34.  By January 1, 2023, BetterHelp accounted for nearly half of Teladoc's revenue and profit.  ¶¶35-49.  Defendants told investors in July 2022 that BetterHelp's performance was "material" to BetterHelp, and instructed analysts to expect that "BetterHelp should continue to drive the majority of growth and profitability in '23."  ¶¶50-53.

### B.  CAC Was Key to BetterHelp's FY23 Financial Performance

To obtain new paying users and therefore increase revenue and profit, BetterHelp had to incur significant advertising costs.  ¶¶54-57.  In particular, BetterHelp heavily advertised in the social media channel, including on Facebook.  ¶¶58-59.  According to Defendants, Teladoc measured the effectiveness of BetterHelp's ad spending by assessing the yield on that spend, which is done by calculating BetterHelp's CAC (total ad spending divided by number of new customers). ¶¶60-73.  Higher CAC means BetterHelp is generating less profit on ad spend.  ¶64.  In the year leading into the Class Period, Defendants repeatedly discussed BetterHelp's CAC performance (¶¶68-70), which analysts reported on.  ¶¶71-72.

### C.  Defendants' Ability to Purposely Manipulate BetterHelp's Ad Spend in FY23 (to Ensure Predictable Revenue, Profit, and Paying User Performance) Relied on Stable CACs

Defendants told investors that BetterHelp's ad spend is manipulated to create predictable seasonality for revenue, profit, and paying users.  ¶¶74–85.  Because ads are costlier during the holidays, BetterHelp reduces ad spend in Q4 each year, lowering CAC and increasing profit (because ad spend is a cost).  ¶75.  BetterHelp then ramps ad spending in Q1, and maintains it through Q3, causing lower profit compared to Q4, but higher revenue and paying user growth in Q1 to Q3.  *Id.*  Defendants repeatedly told investors during FY23 that BetterHelp's performance

would follow this planned seasonality, which was the subject of "a ton of questions" from interested investors. ¶¶76-80. Analysts, in turn, believed BetterHelp would perform in FY23 and FY24 according to the expected seasonal pattern. ¶¶81-84. Thus, when the Class Period began a few weeks into 3Q23, investors had been conditioned to expect certainty in BetterHelp's revenue, profit, and paying user performance for 3Q23 and 4Q23, which hinged on stable CACs, the subject of Defendants' Class Period misrepresentations. ¶¶85, 127-135.

### D. Defendants Immediately Knew When BetterHelp's CACs Temporarily Increased in the Social Media Channel During 1H22

In 1H22, BetterHelp's expected seasonality was disrupted by temporary CAC increases in the social media and paid advertising channels. ¶¶86-87. In commenting on this development, Gorevic admitted that Teladoc was constantly monitoring BetterHelp's CAC, and could quickly discern when CAC was increasing in the social media channel in particular. ¶¶88-92. After the temporary CAC spike caused by unusual competitor spending subsided in 3Q22, Defendants told analysts that BetterHelp's expected seasonality would resume in FY23. ¶¶93-97.

### E. Defendants Also Immediately Knew When BetterHelp's CAC Increased in the Social Media Channel Starting July 1, 2023, Because BetterHelp Had Saturated That Channel

In addressing the fallout from BetterHelp's temporary CAC spike in FY22, Murthy told investors during the November 2022 Conference that it was essential for BetterHelp to return to its planned seasonality (Ex. 19 at 9), but that BetterHelp had to "pull back [on ad spending] when we find the ROIs for the ad spend to be suboptimal." *Id.* Increased CAC causes suboptimal ROIs. ¶64. After Murthy refused to answer an analyst's question about the lowest ad spending yield that BetterHelp would accept (Ex. 19 at 10), Gorevic admitted that BetterHelp's ad spending decisions were based on "what the overall yield of that ad dollar spent is." *Id.* Thus, when Murthy later admitted during the November 2022 Conference that BetterHelp "optimize[s]" ad spending in the

6

social media channel by "look[ing] at this hourly and daily (*id.* at 11; ¶117), "this" clearly referred to BetterHelp's ad spending yield. *Id.* Indeed, the critical importance of BetterHelp's ad spending yield is why Defendants told investors in the first half of FY23 ("1H23") that BetterHelp's CAC was stable and planned seasonality was intact. ¶¶121-125.

Murthy's admission during the November 2022 Conference establishes that Defendants constantly monitored BetterHelp's ad spending yield (and CAC) before and during the Class Period. ¶¶118-119. At the end of the Class Period, during the February 2024 Conference, Defendants confirmed this when they admitted that BetterHelp's ad spend yield had materially declined (meaning CAC had materially increased) starting by July 1, 2023. ¶¶153-154. Gorevic was unequivocal: "we experienced returns on our social media advertising spend that were below target in the second half of the year," a "departure" from 1H23 that would persist in FY24. ¶¶155-157. An analyst asked Murthy "when [did] you all observe the declining ad yield in BetterHelp" and Murthy admitted that Defendants saw this "in the back half of the year[,]" *i.e.*, by July 1, 2023. ¶¶158-159. When asked for "more detail," Gorevic confirmed that BetterHelp had saturated the social media advertising channel by July 1, 2023, and knew that because "as we increase our ad spend, we're constantly looking at the marginal return on the – on each incremental dollar." ¶160.

### F. Teladoc's FTC Settlement in July 2023 Further Demonstrates Defendants' Monitoring of BetterHelp's Social Media CAC

On July 14, 2023, just before the Class Period begins, Teladoc agreed to pay the FTC $7.8 million for allegedly stealing private health data from BetterHelp's customers—individuals seeking mental health treatment—to give to social media companies like Facebook to improve the effectiveness of BetterHelp's ad spend (*i.e.*, lower CACs) in the social media channel. ¶¶98–112. Teladoc's allegedly surreptitious methods for lowering Facebook CAC demonstrate the importance Defendants placed on monitoring social media CAC. ¶¶113-114.

7

**G. Defendants Mislead Investors Regarding BetterHelp's CAC and Expected Seasonality in July 2023**

During the July 2023 Conference, Defendants made a series of misrepresentations designed to convince investors that BetterHelp's CAC was stable and its planned seasonality was unchanged. ¶¶126-129. These misrepresentations had the intended effect: analysts took them to mean that "CACs are under control," that ad spend yield "remains stable," and that as of early October 2023, "CAC dynamics continue to alleviate." ¶¶130-135.

Defendants made no disclosures during the July 2023 Conference about CAC deterioration or deviation from BetterHelp's planned seasonality (*contra* DB7 (citing Exs. 11, 22)), other than to falsely emphasize that BetterHelp's CAC was "stable" (Ex. 22 at 5, 7) and misrepresent that the expected seasonality was intact. *Id.* at 10. Although Murthy mentioned that Teladoc's 2H23 outlook implied revenue "deceleration" during the July 2023 Conference, she claimed this was the result of the difficult comparison for BetterHelp's revenue in 3Q23 against 3Q22 (when BetterHelp significantly increased ad spending following the temporary CAC increase in 1H22 (¶93; *compare* DB7 *with* DB15)), ***not*** materially increased CAC in the social media channel. Likewise, Murthy's comment about "deterioration" during the April 2023 Conference merely communicated worst-case assumptions for Teladoc's guidance range, while the top end assumed CAC "favorability" and present "[c]ustomer acquisition trends" were "stable." Ex. 21 at 4, 6, 9-10, 13-14. Indeed, according to the Individual Defendants' post-Class Period admissions, it would have been impossible for them to have disclosed materially increased CAC in April 2023 because it did not begin until July 1, 2023. ¶¶155-160. Thus, before the Class Period, Defendants never disclosed the material CAC increase that impaired BetterHelp's planned seasonal financial pattern in 2H23.

**H. In October 2023, After Partially Revealing the Truth, Defendants Continue Deceiving Teladoc's Investors Through February 2024**

By late October 2023, BetterHelp's social media channel saturation had negatively impacted CAC for over three months. ¶¶155-160. Thus, during the October 2023 Conference, Defendants were forced to make a partial corrective disclosure: that BetterHelp's ad spending yield experienced "a modest deterioration" in 3Q23, causing profit and paying user metrics to decline, *i.e.*, to not follow the planned seasonality investors were conditioned to expect. ¶¶136-141. In response, Teladoc's stock price declined approximately 3.9%. ¶142.

But Defendants continued to mask the deterioration in BetterHelp's CAC that began by July 1, 2023 by misrepresenting BetterHelp's "advertising environment" as "stable," and failing to disclose that CAC had materially—not "modest[ly]"—increased, that the cause was saturation in the social media channel, and that the planned seasonality was derailed. ¶¶143-144. Again, these misrepresentations (and similar ones made in November 2023 and January 2024 (¶¶149, 152)) had the desired effect: analysts thought ad spend yield had only slightly deteriorated (¶¶146-147), and modeled CAC "approximately flat in 2023, 2024, and 2025." ¶¶150-151.

During the February 2024 Conference, Defendants were forced to reveal the existence and extent of the social media channel saturation because BetterHelp's paying user metric again underperformed (and the Company only met FY23 profit guidance because its other segment, Integrated Care, outperformed expectations (¶164)), confirming that the planned seasonality was disrupted in 3Q23 and 4Q23. ¶¶161-164. In response, Teladoc's stock price declined approximately 23.7%. ¶165. A majority of the analysts covering Teladoc issued scathing reports (demonstrating that they were never previously told this information), and linked Teladoc's stock decline to "declining yields in BetterHelp ad spend channels." ¶¶166-172. Shortly thereafter, the

9

Board fired Gorevic with no immediate successor. ¶¶173-175. In FY24, BetterHelp significantly underperformed and did not follow the planned seasonality. ¶¶176-177.

## III.   ARGUMENT

On Rule 12(b)(6) motions, courts "must accept all factual allegations in the complaint as true" and "draw all reasonable inferences in favor of the plaintiff[.]" *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co. Ltd.*, 19 F.4th 145, 150 (2d Cir. 2021). Under Rule 9(b), a plaintiff need only "create a plausible inference" of fraud. *Id.* at 150-51. Thus, courts "must be careful not to mistake heightened pleading standards for impossible ones." *Id.* at 150. The AC adequately alleges material misrepresentations, scienter, and loss causation, warranting denial of Defendants' motion.

### A.  The AC Adequately Alleges Material Misrepresentations

#### 1.  July 2023

**Statement 1**: On July 26, 2023, during the July 2023 Conference, Gorevic stated BetterHelp had "***stable customer acquisition costs through the first half of the year***." ¶179. This statement gave a false impression that BetterHelp had not experienced CAC deterioration as of the July 2023 Conference. ¶180.

By placing "the topic of the cause of its financial success at issue" (here, BetterHelp's supposed CAC stability), Defendants were "obligated to disclose information concerning the source of its success, since reasonable investors would find that such information would significantly alter the mix of available information." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) (Karas, J.). Because Defendants failed to disclose the material increase in CAC that began July 1, 2023, this statement is actionable. *See Noto v. 22nd Century Grp.*, 35 F.4th 95, 105 n. 49 (2d Cir. 2022) ("choosing to speak" necessitates being "both accurate and complete"); *Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 213–15 (2d Cir. 2020) (half-truths actionable when providing "false impression" of financial health).

10

Defendants first argue that Murthy's "back half" admission did not contemplate a July 1, 2023 start date. DB11. This argument fails because the "back half" of 2H23 indisputably began on July 1, 2023.  Exs. 6-7.  Defendants' argument for an alternative reading is improper, and thus Plaintiffs' interpretation of "back half" must be credited.  *Lapin*, 506 F. Supp. 2d at 240 (rejecting defendants' effort to "misconstrue[] Plaintiff's allegations"); *In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 581 (S.D.N.Y. 2010) (Karas, J.) ("the Court will not decide on a motion to dismiss the fact-intensive inquiry of what meaning the market ascribed to [a] term").[2]

Next, Defendants incorrectly argue that Statement 1 cannot be actionable because it discussed 1H23 CAC.  DB11-13.  "[L]iterally true statements are actionable if they create a materially misleading impression."  *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *7 (S.D.N.Y. June 16, 2020).  Defendants are wrong that "no reasonable investor would interpret" Statement 1 concerning a "stable" CAC trend "to make any representation about 3Q23" (DB13): the AC alleges Statement 1 did precisely that by misleading analysts.  ¶¶130-134 (repeating Defendants' usage of the word "stable").  Indeed, this Court has recognized that such historical statements can be actionable if, as here, "at the time" they were made, there was no "legitimate and reasonable basis for an optimistic outlook."  *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 395 (S.D.N.Y. 2006) (Karas, J.).[3]

---

[2] *In re Riskified Ltd. Sec. Litig.*, 2023 WL 3791653, at *8 & n.7 (S.D.N.Y. June 2, 2023) (DB11), is inapposite because there were no allegations that the "riskier clients" at issue became clients before the July 2021 IPO, just that those clients joined at some unspecified time.  Here, by contrast, Defendants concede the timing that was missing in *Riskified* –*i.e.*, the period starting July 1, 2023.  ¶¶158-159.

[3] Defendants' cited cases (DB11-12) lacked allegations like those in ¶¶130-134 demonstrating that investors were misled by the historical statement at issue.  *See Nokia*, 423 F. Supp. 2d at 393 (no allegation "when [d]efendants allegedly knew" contradictory information); *Bldg. Trades Pension Fund of W. Pennsylvania v. Insperity, Inc*., 2022 WL 784017, at *12 (S.D.N.Y. Mar. 15, 2022) (no specificity for why statement was false); *Rein v. Dutch Bros, Inc.*, 2024 WL 3105004, at *10–*11 (S.D.N.Y. June 24, 2024) (statement and admission concerned different topics); *In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715, at *7 (S.D.N.Y. Nov. 10, 2020) (plaintiff's argument "hinges on an unreasonable interpretation").  Defendants also wrongly argue that there is no obligation to disclose financial data for a quarter in progress (DB13); the Second Circuit held after *In re Focus Media Holding Ltd. Litig.*, 701 F. Supp. 2d

11

Defendants also assert their new argument that Teladoc had disclosed the CAC social media channel saturation before the Class Period. DB13. False. Defendants primarily rely on Exhibit 21 (*id.*), the April 2023 Conference (¶69), where Defendants could not have disclosed this saturation ***because it did not begin until July 1, 2023***. ¶¶155-160. Defendants then point to the unrelated fact that Teladoc achieved Company-wide revenue and profit guidance (but not profit or paying user guidance for BetterHelp (DB4-5, 13)), ignoring that this data includes non-BetterHelp results and that BetterHelp's paying user metric declined for the first time ever in 3Q23 and 4Q23. ¶¶137, 139, 162-164. Defendants' argument also ignores the many analyst reports expressing shock at the 2H23 CAC deterioration which prove investors never obtained this information from Defendants before October 2023 and February 2024. ¶¶138, 166-172; *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 303 (S.D.N.Y. 2018) (analyst interpretation "reflected the state of market knowledge").

At bottom, Defendants assert a truth-on-the-market defense, which is "intensely fact-specific and is rarely an appropriate basis for" dismissal. *Lapin*, 506 F. Supp. 2d at 238; *MBIA*, 700 F. Supp. 2d at 581. Defendants did not "reject[]" that CACs would "remain unchanged" in FY23 nor "warn[]" that yield deterioration or revenue deceleration would result from increased CACs. DB13–14. In April and July 2023, Murthy simply affirmed BetterHelp's planned seasonality, and provided hypothetical outcomes underlying FY23 guidance. Ex. 21 at 10, 14; Ex. 22 at 10. Indeed, Murthy reiterated in April 2023 that BetterHelp had "stable customer acquisition costs" (Ex. 21 at 6), the same as Gorevic implied in July 2023. ¶179. Defendants never disclosed BetterHelp's CAC social media saturation in making these statements. DB7. That hardly suffices

---

534 (S.D.N.Y. 2010) that there is a disclosure obligation when, as here, the omitted data is material. *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 36 (2d Cir. 2017).

to establish the truth-on-the-market defense. *See Lapin,* 506 F. Supp. 2d at 238-39 (rejecting defense for failing to convey a "degree of intensity and credibility sufficient" to counter fraud).

**Statement 2**: During the July 2023 Conference, in response to an analyst's question that presumed "***the stability in [CACs]***," Murthy misportrayed the "***cadence of ad spending***" as "***balanced***[.]" ¶181. This falsely implied that BetterHelp's planned seasonality was operating unimpeded, when, in reality, increased CAC was negatively impacting BetterHelp. ¶182.

In response, Defendants argue that the cadence of FY23 ad spending was more balanced compared to FY22. DB14. Again, this misconstrues Plaintiffs' falsity allegations, which center on the fact that this statement misled investors into incorrectly believing that BetterHelp's planned seasonality was intact. *Supra* §II.G. As Defendants' chart demonstrates, ad spending in 3Q23 was the highest amount expended by BetterHelp in FY22 or FY23 (DB14), but it was accompanied by BetterHelp's first-ever decline in paying users. ¶137. This is mathematical proof of materially increased CAC (and a breakdown in planned seasonality) in 3Q23. ¶¶60-61.

**Statement 3**: Teladoc's 2Q23 Form 10-Q falsely reported "***no material changes***" to risk warnings concerning potential "decrease in . . . effectiveness" of BetterHelp advertising. ¶183. Yet, Defendants knew by July 1, 2023 that BetterHelp's social media saturation had decreased the effectiveness of BetterHelp's advertising. ¶184. Statement 3 is actionable for the same reason that Defendants' reliance on purported warnings and guidance (DB13–14) fails—the risk to BetterHelp's advertising's "effectiveness" had already materialized. *See Stadium Capital LLC v. Co-Diagnostics, Inc.*, 2024 WL 456745, at *2 (S.D.N.Y. Feb. 5, 2024) (warning about future "risk"

13

misleading if it "has already happened or is then happening"); *In re Facebook, Inc. IPO Sec. and Deriv. Litig.*, 986 F. Supp. 2d 487, 515-16 (S.D.N.Y. 2013) (collecting cases).[4]

### 2. October 2023

After being forced to admit to a "modest deterioration" in CAC due to BetterHelp's profit and paying user declines in 3Q23 (¶¶136-140), Defendants doubled-down and continued to mislead investors regarding BetterHelp's CAC and planned seasonality:

**Statement 4** (Gorevic): "***Customer acquisition costs remain near the midpoint of our outlook range[.]***" ¶185.

**Statement 5** (Murthy): BetterHelp was then-experiencing a "***more stable advertising environment compared to [FY22] as well as sustained gross margin improvement***." ¶187.

**Statement 6** (Murthy): BetterHelp's "***scale enables us to drive and earn strong returns on our [ad] spend, and that gives us a real advantage***." ¶189.[5]

Defendants do not contest that these statements, made on October 24, 2023, fell well within the "back half" of 2H23. DB15-17. Because the CAC social media saturation was entrenched by this time, BetterHelp was ***not*** then-experiencing a "more stable advertising environment compared to [FY22][,]" let alone "sustained gross margin improvement." ¶¶186, 188. As Defendants' chart concedes, BetterHelp missed 4Q23 revenue guidance with 0% growth, proving the negative impact caused by materially increased CAC in 4Q23. DB5. Similarly, by October 2023 BetterHelp's "scale" was the problem causing social media CAC saturation, and not the catalyst "to drive and earn strong returns on our [ad] spend[.]" ¶¶189-190.

---

[4] Defendants misconstrue *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199 (S.D.N.Y. 2018). DB14. *Ong* found the "no material changes" language in Chipotle's 10-Q "may be actionable," but dismissed on scienter grounds because, unlike here, Chipotle made no knowledge admissions. 294 F. Supp. 3d at 228-30.

[5] Statement 7 (¶¶191-192) is misleading for the same reasons as Statement 3. *Supra* §III.A.1; *cf.* DB17.

For Statement 4, Defendants echo their pre-motion letter in citing the "likely to persist" language from Defendants' partial corrective disclosure as a purported full disclosure of social media saturation and elevated CAC.  DB15.  Defendants again ignore the critical "in this range" caveat.  ECF 64 at 5.  By phrasing BetterHelp's CAC in October 2023 as "a *modest* deterioration" that was "likely to persist *in this range through*" 4Q23 (¶136), Defendants did *not* communicate that social media CAC was saturated and had materially increased, or that the planned seasonality had been derailed. *Id.*  That is why analysts benignly reported in October 2023 that BetterHelp's CAC was "not necessarily a deterioration []" (¶¶146-147), and reacted with shock when they learned in February 2024 about the "persistent elevated CAC[.]"  ¶¶166-172.  *See In re Salix Pharms., Ltd.,* 2016 WL 1629341, at *10–*11 (S.D.N.Y. Apr. 22, 2016) (statements that "led analysts to believe" metrics "were merely slightly outside of" ideal range misleading); *Citiline Holdings, Inc. v iStar Fin., Inc.*, 701 F. Supp. 2d 506, 515 (S.D.N.Y. 2010) (finding "dramatic[]" share price decline following full disclosure demonstrated insufficient information in the market).  Furthermore, because Statement 4 misrepresented that CAC had not materially increased (¶186), whether Teladoc adjusted "its *company-wide* FY23 revenue guidance" (DB15) in October 2023 is irrelevant.  *Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64, 85 (2d Cir. 2021) ("literally true" statements are actionable when they create a "materially misleading impression[.]").[6]

For Statement 5, Defendants argue it was commentary on an "anomalous spending pattern for 2022." DB16. Nonsense. Murthy clearly referenced the "advertising environment" in FY23 (Ex. 23 at 7), and concealed Defendants' real-time knowledge that BetterHelp's advertising—not competitors', as in FY22—was saturating the social media channel, *i.e.* "driving up [CAC]" such

---

[6] Unlike in *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 355 (S.D.N.Y. 2014) (DB15), the full consequences of BetterHelp's materially increased CACs (*i.e.*, saturation) (¶160) were not "fully disclosed" nor "public knowledge" until February 2024 (¶¶155-161).

that BetterHelp had "run out of room" to ad spend profitably, harming "profitability." ¶¶155-160. Likewise, Defendants' attempt to reengineer Statement 5 into one "of past performance" (DB16) should be rejected because it is indisputably present tense.  ¶185; *Lapin*, 506 F. Supp. 2d at 240.

For Statement 6, Defendants again misconstrue the AC's allegations (DB16-17), ignoring that Gorevic admitted BetterHelp's scale was driving *lower* returns (meaning increased CAC) compared to any "single competitor[.]"  ¶¶160, 190.  Defendants' alternative arguments—that Statement 6 is puffery or opinion—similarly fail.  *See Abramson v. Newlink Genetics Corp*., 965 F.3d 165, 175-76 (2d Cir. 2020) (whether statements are fact or opinion is insignificant; what matters is if the statements misled investors); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *11–*12 (S.D.N.Y. Nov. 26, 2018) (statements that "were purported descriptions of the health of the business" are not puffery).

### 3.   November 2023 and January 2024

In November 2023 (nearly the end of the "back half" of FY23) and January 2024 (after 2H23 was over), Defendants continued to mislead investors regarding BetterHelp's CAC and planned seasonality.  ¶¶148-152.

**Statement 8** (Gorevic): BetterHelp's current CACs were "*a little worse than our expectations for the year . . . They're slightly worse than our expectations*."  ¶195 (November 2023).

**Statement 9** (Gorevic): "*we always pull back on ad spend [for BetterHelp] at this time of the year [in 4Q23]*."  ¶193 (November 2023).

**Statement 10** (Gorevic): "*I've had investors ask me, 'Hey, is [BetterHelp] run out of growing room? Is it going to shrink next year?' I don't think there's any scenario where we believe that that's the case*."  ¶197 (January 2024).

These misrepresentations: (1) falsely assured that BetterHelp's expected seasonality was intact; (2) downplayed the material CAC increases beginning on July 1, 2023; (3) failed to disclose BetterHelp's social media saturation; and (4) gave a misimpression that elevated 2H23 CACs would not impede 2024 growth—despite the known lag between ad spending and financial results. ¶¶194, 196, 198. These misrepresentations are actionable. *See In re Nielsen Holdings PLC Sec. Litig.,* 510 F. Supp. 3d 217, 229-30 (S.D.N.Y. 2021) (statements reaffirming the "stability" of a business misleading given admission defendants "were aware of the trend" in real-time).

For Statement 8, Defendants again mistakenly argue that BetterHelp meeting its FY23 revenue guidance meant that the full "extent of CAC deterioration" had been disclosed before November 2023. DB17. As Defendants concede, however, BetterHelp missed its 4Q23 revenue guidance and achieved 0% growth (DB5), a fact that was unknown to investors in November 2023. ¶196. In addition, Defendants ignore that the November 2023 Conference involved just one analyst from Piper Sandler (Ex. 24), the very same analyst who modeled "BetterHelp CACs approximately flat in 2023, 2024, and 2025" in response to Gorevic's CAC statements during the November 2023 Conference. ¶¶149-151. This demonstrates falsity for Statement 8. *Salix*, 2016 WL 1629341, at *10–*11.

For Statement 9, Defendants again argue that it is a true statement (DB17-18), and again misconstrue the AC's allegations. ¶¶193-194. The message behind Statement 9 was that, by lowering ad spending in 4Q23, BetterHelp's planned seasonality was supposedly intact (*id.*), when, in reality, by this point in 4Q23, BetterHelp's revenue and paying user growth had materially declined due to the saturation of BetterHelp's social media channel. ¶¶155-160.

For Statement 10, Defendants argue that Teladoc's FY24 revenue guidance of "flat to low single digit growth" is dispositive. DB18. False. Statement 10 was explicitly intended to speak

17

broadly to "any scenario" regarding BetterHelp's "growing room[]" and was not limited to one particular metric (revenue).  ¶197.  Defendants' argument ignores that, in February 2024,  they revealed that BetterHelp's CAC increases due to social media channel saturation resulted in: (1) FY24 profit guidance of "[f]lat +/- 50bps" versus FY23, *i.e.*, no profit growth for FY24 (¶161); (2) 1Q24 revenue guidance range of (6%) to (3%) (*i.e.*, "shrink[ing]" revenue) (¶¶197-198); and (3) negatively "impact[ed] year-over-year growth rates in the first half of 2024."  ¶157.  Falsity for Statement 10 is buttressed by subsequent analyst commentary.  ¶167 (analyst surprised to "find . . . a more challenging environment facing TDOC, with BetterHelp growth constrained by persistent elevated CAC" particularly "given [Gorevic's] commentary at [the January 2024 Conference]"); *In re Ply Gem Holdings, Inc.*, 2016 WL 5339541, at *4 (S.D.N.Y. Sept. 23, 2016) (post-revelation analyst reports "point[ing] directly to the alleged omissions" demonstrate falsity).

Additionally, Defendants incorrectly argue that Statement 10 is forward-looking and protected by the safe harbor (DB18-19).  ECF 63.[7]  First, Gorevic's phrasing of "any scenario" is present-oriented, not forward-looking, meaning the safe harbor is inapplicable.  *Salix*, 2016 WL 1629341, at *9.  Second, because Statement 10 is a half-truth (¶198), the safe harbor is improperly invoked.  *Id.*  Third, by January 2024 (after FY23), Gorevic had actual knowledge of BetterHelp's 2H23 material CAC increase and related social media channel saturation.  ¶¶155-160.

Moreover, Defendants' purported "cautionary language" (DB18) did not "meaningfully" address that CACs were elevated and revenue was thereby decelerating.  In fact, the only "cautionary language" Defendants cite is non-specific boilerplate in PowerPoint slides for the

---

[7] Defendants' opinion argument for Statement 10 fails for the reasons Plaintiffs previously explained.  *Supra* §III.A.2; ECF 64 at 4; s*ee Abramson*, 965 F.3d at 175-76 (opinion falsely "impl[ying] facts or the absence of contrary facts" actionable).  Nor was Statement 10 puffery (DB18-19), because Gorevic explicitly sought to quell rising curiosity from "investors," which inherently demonstrates materiality for Statement 10.  ¶197; *Signet Jewelers*, 2018 WL 6167889, at *11–12.

January 2024 Conference that were never publicly disseminated to investors through an SEC filing. *Id.* (citing Ex. 25 at 2). This is not "repeated warnings about CAC deterioration"—there is no mention of CAC at all. *Id.* Indeed, Defendants curiously failed to attach the January 2024 Conference transcript (Ex. A) – the actual source of the AC's allegations. *Compare* Ex. A at 9 *with* ¶¶152, 197. Statement 10 appears **nowhere** in Exhibit 25, and **nothing** in Exhibit A directs investors to any cautionary language. Thus, Defendants have failed to provide **any** cautionary language for the January 2024 Conference. *See Moradpour v. Velodyne Lidar, Inc.*, 2022 WL 2391004, at *16 (N.D. Cal. July 1, 2022) (to be protected, oral misstatements must "refer[] to documents" where "cautionary statements could be found"); *cf. Nokia*, 423 F. Supp. 2d at 404 n.14.

## B. The AC Adequately Alleges Scienter

Scienter is adequately pled upon allegations evincing a strong inference of knowledge, conscious misbehavior, or recklessness. *Set Cap.*, 996 F.3d at 78. Defendants are reckless if they "knew facts or had access to information suggesting that their public statements were not accurate." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). Courts must consider scienter allegations "holistically[]" rather than "scrutinized in isolation[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-26 (2007). Plaintiffs need no "smoking-gun[;]" the scienter inference need only be "at least as compelling as any opposing inference[.]" *Id.* at 324. Ties go "to the plaintiff." *City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012).

Defendants concede motive is not required to adequately allege scienter. DB19. Nonetheless, to distract from their weak knowledge arguments, Defendants dedicate two pages of briefing to this non-issue. DB19-21. The Individual Defendants' Teladoc stock holdings are irrelevant. *Lockheed*, 875 F. Supp. 2d at 371 ("That plaintiff has not pled motive does not make the fraud illogical; indeed, if that were the case, motive and opportunity would be the sole test for

pleading scienter, not just an alternative test."). So too is BetterHelp's revenue guidance for 2H23, which did not alert investors to the material CAC increase or derailed planned seasonality. *Supra* §III.A.1. Moreover, Defendants did not willingly choose to make a partial corrective disclosure in October 2023–they were forced to concede *some* level of CAC deterioration in October 2023 because BetterHelp's profit and paying users declined, thereby indicating to investors that planned seasonality was jeopardized. ¶¶136-139. Defendants then made additional misrepresentations during the October 2023 Conference (¶¶143-147), consistent with the fraud alleged.

### 1. Defendants Admittedly Knew CACs Increased By July 1, 2023

During FY22, Defendants acknowledged their ability to quickly discern when BetterHelp CACs increased. ¶¶88-94. Murthy confirmed this during the November 2022 Conference by admitting that Defendants reviewed BetterHelp's ad spending yield "***hourly and daily[.]***" ¶¶117-118, 205. Then, during the February 2024 Conference, Gorevic admitted BetterHelp's ad spend yield was "below target ***in the second half of*** [FY23.]" ¶155. Murthy confirmed "***[w]e had actually started observing***" this "***in the back half of the year[.]***" ¶158. And Gorevic left no doubt: at all relevant times, Defendants were "***constantly looking at*** the marginal return on … each incremental dollar." ¶160. Defendants' admittedly "detailed knowledge and involvement" in BetterHelp's "marketing" evidences scienter. *City of Sterling Heights Police & Fire Retirement Sys. v. Reckitt Benckiser Group PLC*, 587 F. Supp. 3d 56, 98 (S.D.N.Y. 2022).

Taken together, Defendants' admissions adequately allege Defendants' knowledge of (and frequent access to) BetterHelp's materially increased CAC during the entire Class Period. *See Macovski v. Groupon, Inc.*, 553 F. Supp. 3d 460, 475 (N.D. Ill. 2021) (finding scienter for "July 30, 2019" statements when, as here, "defendants admitted [in February 2020] that [the issue] became apparent in the 'second half of 2019'" and rejecting argument "that it is unreasonable to infer that they knew of [the issue] only one month into the second half of 2019 . . . ."); *Stadium*

*Capital*, 2024 WL 456745, at \*5-\*6 (finding scienter when, as here, an executive admitted the company was "able to monitor the daily influx of demand for our tests" and admitted at the end of the class period that the company saw a "falloff" in demand as the prior quarter progressed); *Nielsen*, 510 F. Supp. 3d at 237 (frequent discussion of topic demonstrates scienter); *Lapin*, 506 F. Supp. 2d at 237 ("plaintiffs may rely on post-class period" statements for scienter).  Indeed, given the holding in *Macovski* on nearly identical facts, there is no dispute that the "back half" admission applies to the July 2023 statements.

Defendants argue that Murthy's admission in the November 2022 Conference was disconnected from "CAC or yield." DB22-23 However, they ignore surrounding context from the November 2022 Conference, which indisputably shows that Defendants were discussing ad spending yield and CAC.  *Supra* §II.E.  Ad spending "optimization across advertising channels" (DB22) necessarily implicates CACs and yields, which Defendants repeatedly acknowledged knowing before and during the Class Period.  ¶88 (tying CAC and yield to specific channels); ¶155 (specifically describing social media channel's yields); ¶160 ("***as we increase our ad spend, we're constantly looking at the marginal return … on each incremental dollar. And so we work hard to make sure that each incremental dollar***" (*i.e.*, ad spend) "***is productive for us[]***" (*i.e.*, produces profitable yield, based on CACs)).

Next, Defendants assert the alleged "hourly and daily" and "we're constantly looking" admissions do not encompass the Individual Defendants.  DB22-23.  That is an impermissible fact dispute. And an incorrect one—Murthy unequivocally stated "***[w]e*** look at this hourly and daily" during the November 2022 Conference (only Gorevic and Murthy participated from Teladoc (Ex. 19 at 3)), and Gorevic said "***we're*** constantly looking at the marginal return" during the February 2024 Conference (same (Ex. 26 at 15).  *Stadium Capital*, 2024 WL 456745, at \*6 (finding that the

21

"we" in "we are … able to monitor" included all of the executives on the call where the admission was made).  Accepting these allegations as true and construing them in Plaintiffs favor, as the Court must, the admissions clearly referenced the Individual Defendants in their personal capacities.  *See Lapin*, 506 F. Supp. 2d at 240.

Defendants further argue that "monitoring" allegations can never suffice for scienter. DB23-24.  Wrong.  Here, the subject of Defendants' admitted knowledge from monitoring— BetterHelp's CAC and ad spending yield (¶¶117-18, 155-160)—is the very thing Plaintiffs allege was misrepresented to investors.  ¶¶179-198.  Such allegations routinely suffice to adequately allege scienter.  *See Plumbers & Pipefitters Nat'l Pension Fund v. Tableau Software, Inc.*, 2019 WL 2360942, at *6 (S.D.N.Y. Mar. 4, 2019) (finding scienter where "the effects of competition were being closely monitored by the company's management"); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014) (monitoring performance metrics in "real time" demonstrated scienter); *Salix*, 2016 WL 1629341, at *14–*16 (same).[8]

Finally, Defendants' overlook that their centerpiece argument—"that Teladoc *expected . . .* deterioration in CAC during the second half of 2023" before the Class Period (DB1, DB7)— equates to an admission that Defendants had actual knowledge of BetterHelp's material CAC increase for the entire Class Period.  *See In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 526-27 (E.D.N.Y. 2025) ("Critically, Defendants expressly conceded that they had actual knowledge of [an issue] … when they discovered and fixed the issue."); *MBIA*, 700 F Supp. 2d at 591

---

[8] This distinguishes the AC from the cases Defendants cited (DB23-24), all of which lacked executives' admissions of actual knowledge from monitoring data during the Class Period.  *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (rejecting allegations of "broad reference to raw data" because no executive was plausibly alleged to have reviewed it); *Cox v. Blackberry Ltd.*, 660 F. App'x 23, 25 (2d Cir. 2016) (executive never admitted their access to information); *Nokia*, 423 F. Supp. 2d at 406-07 (rejecting monitoring allegations because, unlike here, plaintiff could not allege "when Defendants had the data to know its general optimistic statements were false").

22

("Defendants cannot maintain that its officers repeatedly disclosed [information] to the market, but that none of its officers were aware of the [information].").[9]

### 2.    The FTC Order Supports Scienter

The FTC Order's announcement days before the Class Period (¶110) and its related compliance obligations (¶112) support a finding that Defendants were closely monitoring CAC in the social media channel during the Class Period.  ¶¶113-114.  Being ordered to cease conduct that artificially lowered CACs and increased yields (¶¶103–114) is indisputably related to the AC's allegations, unlike the "unrelated" investigation in *Rotunno* v. *Wood*, 2022 WL 14997930, at *3 (2d Cir. Oct. 27, 2022). DB24–25.

### 3.    The Core Operation Doctrine Supports Scienter

Throughout FY23, Defendants told investors that BetterHelp would be the primary driver of Teladoc's revenue and profit growth in FY23, having constituted nearly 50% of both metrics. ¶¶35-53.  Thus, BetterHelp was a core operation of Teladoc because it was "a significant source of income." *In re Avon Sec. Litig.*, 2019 WL 6115349, at *20 (S.D.N.Y. Nov. 18, 2019) (market segment representing 21% of revenue sufficient to support application of the core operations doctrine); *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37-38 (S.D.N.Y. 2019) (same for division that was the "primary profit engine").  Defendants' cases (DB25-26) agree that the core operations doctrine can provide supplemental support for scienter. *See, e.g.*, *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *15 (S.D.N.Y. Mar. 30, 2021) (recognizing the applicability of the core operations doctrine, but declining to apply it because scienter was otherwise inadequately alleged).

---

[9] Defendants also argue that the AC does not identify "reports discussing CAC" to prove Defendants' knowledge. DB2, 21–22. However, this is unnecessary because Defendants directly "***acknowledged*** [their] access to and review of [CAC] data." *Stadium Capital*, 2024 WL 456745, at *6 (pleading specific reports is not required where defendants admit actual knowledge); *cf. Nokia*, 423 F. Supp. 2d at 407 ("[s]cienter can be sufficiently pled when a complaint alleges that defendants were updated on a regular basis about the facts upon which the falsity is alleged").

#### 4.    Gorevic's Firing Supports Scienter

The Board's abrupt firing of nearly fifteen-year veteran Gorevic, without an immediate replacement (¶¶173-175) shortly after the February 2024 corrective disclosure also supports Gorevic's scienter.  *See Yannes v. SCWorx Corp.*, 2021 WL 2555437, at *6 (S.D.N.Y. June 21, 2021) (termination close to fraud's revelation "add[s] further weight" to scienter).  Analysts linked Gorevic's termination to BetterHelp's underperformance. ¶175. *See In re OSG Sec. Litig.*, 12 F. Supp. 3d 622, 632 (S.D.N.Y. 2014) (resignation "a few months later" support scienter). Defendants' cases (DB25) are distinguishable because, unlike here, they lacked suspicious circumstances surrounding the executives' departures. *See Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 303 (S.D.N.Y. 2019) (resignation "[s]tanding *alone*" did not support scienter).

#### 5.    Plaintiffs' Scienter Inference is at Least as Strong as Defendants' Competing Inference

Plaintiffs allege a strong inference of Defendants' knowledge or recklessness through allegations that: Defendants admittedly knew BetterHelp's CAC had materially increased as of July 1, 2023, deviating from planned seasonality; Defendants admittedly monitored BetterHelp's CAC and ad spending yield, including "hourly and daily" and "constantly"; Defendants routinely discussed BetterHelp's CAC, ad spend yield, and BetterHelp's expected seasonality with investors frequently and in depth; Defendants allegedly resorted to surreptitious methods to lower CAC in the social media channel, for which the FTC sanctioned them immediately preceding the Class Period; Defendants were attuned to BetterHelp as Teladoc's primary growth driver; and Gorevic was suspiciously fired.

Taken collectively (as *Tellabs* requires), these allegations demonstrate that, in light of BetterHelp's temporary CAC increase in FY22, Defendants understood that if investors were aware that a material increase to BetterHelp's CAC occurred—which admittedly happened by July

24

1, 2023—then the entire profit thesis of BetterHelp's expected seasonality would be eviscerated and Teladoc's main profit driver would be impaired. Defendants do not offer a cogent, much less compelling, alternative narrative. DB26. Instead, Defendants reiterate their irrelevant motive argument, and their factually inaccurate argument that Defendants fully disclosed BetterHelp's social media CAC saturation by the start of the Class Period. *Id.* But nothing in the AC or Defendants' exhibits remotely supports this narrative. The only plausible inference is that Defendants saw the structural, material increase in BetterHelp's CAC begin by July 1, 2023, chose not to disclose it during the July 2023 Conference, and then chose to affirmatively mislead investors during the October 2023 Conference when forced to report the initial effects of BetterHelp's CAC increase during 3Q23.

### C. The AC Adequately Alleges Loss Causation

Loss causation allegations are assessed under the notice pleading standard articulated in Rule 8. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). The AC need allege only "some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* at 346–47. This occurs when a plaintiff pleads "the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Abramson*, 965 F.3d at 179. A corrective disclosure need not be a "mirror image tantamount to a confession of fraud." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010). Partial corrective disclosures are permissible. *Id*.

### 1. The October 2023 Partial Corrective Disclosure

During the October 2023 Conference, Defendants disclosed for the first time that BetterHelp had experienced "a modest deterioration" in ad spend yield and corresponding declines in BetterHelp's profit and paying users, causing Teladoc's stock price to decline. ¶¶136-142, 213-214. Contrary to Defendants' argument (DB26-27), the October 2023 partial corrective disclosure did concern "the subject" of Defendants' July misrepresentations: BetterHelp's CAC and expected

25

seasonality.  *Abramson*, 965 F.3d at 179-80 (conclusive proof of loss causation is not required now).  Notably, Defendants argue that the October 2023 partial corrective disclosure "disclosed the precise information that forms the core of Plaintiffs' case" (DB15), undermining Defendants' argument that these disclosures were disconnected from their July 2023 misrepresentations.  DB27.  Regardless, the connection between the misrepresentations and the October 2023 stock decline is bolstered by an analyst who reported the "[quarter-over-quarter] decline in paying users was ***surprising***" given BetterHelp's 3Q23 ad spend. ¶138; *see Boston Ret. Sys. v. Alexion Pharms., Inc.*, 556 F. Supp. 3d 100, 141 (D. Conn. 2021) ("contemporaneous analyst commentary" provides support for loss causation allegations).

As in their pre-motion letter, Defendants again attempt to misconstrue Plaintiffs' counsel's statements during the lead plaintiff hearing, and still provide no supporting case law.  ECF 63 at 4-5; DB27.  As Plaintiffs' counsel explained during the hearing, the October 2023 partial corrective disclosure that the AC challenges was ***not*** adequately alleged in the complaint filed by Waits, a competing lead plaintiff movant who was engaged in blatant gamesmanship.  Ex. B at 7:24–8:6, 19:18–20:4, 23:24–24:3.  Thus, the October 2023 partial corrective disclosure can properly be alleged later in the AC under established law.  *See Villare v. Abiomed, Inc.*, 2020 WL 3497285, at *4–5 & n.8 (S.D.N.Y. June 29, 2020) ("all courts agree that no binding determinations" regarding contours of alleged fraud "shall be made as part of the lead-plaintiff analysis"); *Ragan v. AppHarvest, Inc.*, 2021 WL 5909116, at *7 (S.D.N.Y. Dec. 13, 2021) (same; collecting cases); *Freudenberg*, 712 F. Supp. 2d at 205 ("well established that an amended complaint [] supersedes the original, and renders it of no legal effect"). Defendants overlook the inapplicability of Waits's allegations, which is fatal to their argument. Moreover, unlike the Waits complaint, the AC alleges

26

far more corrective detail about CAC, yield, paying users, and adjusted EBITDA linked to the July 2023 misrepresentations, as well as analyst commentary confirming the linkage. ¶¶136–139.

### 2. The February 2024 Corrective Disclosure

During the February 2024 Conference, Defendants revealed for the first time that BetterHelp had experienced materially increased CAC in the social media channel since July 1, 2023 as a result of saturating this channel. In 2H23, this saturation prevented BetterHelp from making additional profitable advertising expenditure in the social media channel and derailed BetterHelp's expected seasonal financial results, both of which would continue in FY24, thereby causing a significant nearly 24% decline in Teladoc's stock price. ¶¶215-216.

Analysts were shocked by the extent of BetterHelp's CAC deterioration and related inability to maintain the expected seasonality, as well as the origin of those issues: social media channel saturation. *See, e.g.*, ¶166 ("Sustained Higher Customer Acquisition Costs Weigh on BetterHelp" which "was due to continued elevation of CACs, particularly in social media channels[.]"); ¶167 (despite being "cautiously optimistic" after the January 2024 Conference, "[w]hat we find is a more challenging environment facing TDOC, with BetterHelp growth constrained by persistent elevated CAC[.]"). These allegations further support a finding that the February 2024 Conference corrective disclosure supports loss causation. *Alexion Pharms.*, 556 F. Supp. 3d at 141. And they severely undercut Defendants' incorrect argument that investors were previously told this information in April and July 2023. DB27-28; DB7.

Defendants perfunctorily argue that the February 2024 corrective disclosure "did not 'correct' any prior statement challenged in the Complaint." DB27. Again, Defendants ignore the substance of the challenged misrepresentations, which squarely center on the "more stable advertising environment" and related "sustained gross margin improvement" (¶187), and

BetterHelp's "scale" being a catalyst for "earn[ing] strong returns on our [ad] spend" (¶189), that investors learned were inaccurate through the February 2024 corrective disclosure.

Finally, Defendants mischaracterize BetterHelp's materially increased CAC and corresponding consequences as a "known risk." DB27–28. Again, Defendants interject an impermissible truth-on-the-market defense by citing "warnings" about ad spending yield deterioration that never informed investors of the information provided during the October 2023 or February 2024 corrective disclosures. *Supra* §III.A.1. Because there were no known risks of social media channel CAC saturation disclosed, Defendants' loss causation argument fails.[10]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied in its entirety. If the Court grants any part of Defendants' motion, Plaintiffs respectfully request leave to amend. *See Diebold Nixdorf*, 2021 WL 1226627, at \*15 & n.25 (granting plaintiff an additional opportunity for amendment "as [it is] now on notice of the deficiencies in [its] pleadings" from the Court).[11]

DATED:  August 6, 2025                     **LEVI & KORSINSKY, LLP**

*/s/ Shannon L. Hopkins*
SHANNON L. HOPKINS
GREGORY M. POTREPKA
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone:  203/992-4523
212/363-7171 (fax)
shopkins@zlk.com
gpotrepka@zlk.com

---

[10] Unlike in *YPF* (DB28), there was no "extensive media coverage" of a known risk preceding the October 2023 and February 2024 corrective disclosures. 15 F. Supp. 3d at 357-58. This conclusion is obvious given the significant declines in Teladoc's share price and analyst surprise. ¶¶138, 166–172. Here, Defendants never disclosed BetterHelp's materially increased CAC before the Class Period (*supra* §II.G), and the corrective disclosures are clearly linked to declines in Teladoc's stock price, rendering *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2024 WL 4349289, at \*9 (S.D.N.Y. Sept. 30, 2024), inapposite. DB28.

[11] Because Defendants' arguments concerning §20(a) are derivative of their §10(b) arguments, and because the AC adequately alleges §10(b) claims against the Individual Defendants, the AC has adequately alleged §20(a) claims. *See Altimeo*, 19 F.4th at 152; *Lapin*, 506 F. Supp. 2d at 244-249.

**ROBBINS GELLER RUDMAN**
 **& DOWD LLP**
SAMUEL H. RUDMAN
MICHAEL G. CAPECI
NATALIE C. BONO
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
mcapeci@rgrdlaw.com
nbono@rgrdlaw.com

*Co-Lead Counsel for Co-Lead Plaintiffs*

29

## CERTIFICATION OF WORD COUNT

I, Shannon L. Hopkins, hereby certify pursuant to Local Civil Rule 7.1(c) and Judge Karas's Individual Practices § II.B., that Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss contains 8,749 words, in compliance with the limit of 8,750 words.

DATED:  August 6, 2025


_____
*/s/ Shannon L. Hopkins*
SHANNON L. HOPKINS

*Co-Lead Counsel for Co-Lead Plaintiffs*