**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL STARY, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br>vs.<br>TELADOC HEALTH, INC., JASON NATHANIALL GOREVIC, and MALA MURTHY,<br><br>                              Defendants. | Case No. 7:24-cv-3849 |

**REPLY IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS THE**
**AMENDED CLASS ACTION COMPLAINT**

PAUL, WEISS, RIFKIND,
  WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000

*Attorneys for Defendants Teladoc Health,*
*Inc., Jason Gorevic, Mala Murthy*

Dated: September 17, 2025

**TABLE OF CONTENTS**

I.      The Complaint Fails to Plead Falsity ................................................................................. 1

        A.      July 2023 Statements ............................................................................................ 2

        B.      October 2023 Statements ...................................................................................... 4

        C.      November 2023 and January 2024 Statements ...................................................... 6

II.     The Complaint Fails to Plead Scienter .............................................................................. 8

III.    The Complaint Fails to Plead Loss Causation .................................................................. 11

CONCLUSION ........................................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson* v. *Newlink Genetics Corp.*,
   965 F.3d 165 (2d Cir. 2020).................................................................................................6

*Brody* v. *Homestore, Inc.*,
   2003 WL 22127108 (C.D. Cal. Aug. 8, 2003)......................................................................2

*City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*,
   752 F.3d 173 (2d Cir. 2014)..................................................................................................1

*Glantz* v. *James River Grp. Holdings, Ltd.*,
   2025 WL 278440 (S.D.N.Y. Jan. 23, 2025) .......................................................................10

*Lapin* v. *Goldman Sachs Group Inc.*,
   506 F. Supp. 2d 221 (S.D.N.Y. 2006)..................................................................................2

*In re Lululemon Sec. Litig.*,
   14 F. Supp. 3d 553 (S.D.N.Y. 2014).....................................................................................5

*Macovski* v. *Groupon, Inc.*,
   553 F. Supp. 3d 460 (N.D. Ill. 2021) ....................................................................................9

*In re MBIA, Inc. Securities Litigation*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010)..................................................................................2

*N.Y.C. Pub. Pension Funds* v. *Coupang, Inc.*,
   2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025)...............................................................2, 3, 6

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)...........................................................................3, 9, 10

*Plumbers & Pipefitters Nat'l Pension Fund* v. *Tableau Software, Inc.*,
   2019 WL 2360942 (S.D.N.Y. Mar. 4, 2019) ......................................................................10

*In re Ply Gem Holdings, Inc.*,
   2016 WL 5339541 (S.D.N.Y. Sept. 23, 2016)......................................................................8

*In re Riskified Securities Litigation*,
   2023 WL 3791653 (S.D.N.Y. June 2, 2023) .....................................................................2, 9

*In re Signet Jewelers Limited Securities Litigation*,
   2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018)......................................................................6

*In re Skechers USA, Inc. Sec. Litig.*,
    444 F. Supp. 3d 498 (S.D.N.Y. 2020).......................................................................................3

*Stadium Capital LLC* v. *Co-Diagnostics, Inc.*,
    2024 WL 456745 (S.D.N.Y. Feb. 5, 2024)..............................................................................9

Plaintiffs' opposition ("Opp'n") confirms that the Complaint fails to plead that Defendants made any false or misleading statements, much less with scienter, or that Defendants' statements caused Plaintiffs' alleged losses.  The Complaint should be dismissed with prejudice.

## I.        The Complaint Fails to Plead Falsity

Plaintiffs' theory is that Defendants misled investors about increasing CAC during 3Q23 and 4Q23, instead conditioning them to "expect certainty" in BetterHelp performance. (*E.g.*, Opp'n 6.)  But, as Defendants' opening brief showed, Teladoc (i) warned investors before the Class Period of CAC deterioration and deceleration in the second half of 2023; (ii) projected "deterioration in [CAC]" at the bottom end of 2023 revenue guidance, which BetterHelp ***met*** (meaning, Teladoc experienced precisely the CAC deterioration it predicted and disclosed before the Class Period); and (iii) promptly disclosed CAC deterioration during routine reporting on the 3Q23 and 4Q23 earnings calls.  (Br. 7-9, 13.)  Plaintiffs do not—and cannot—dispute this.

Plaintiffs instead ask the Court to ignore Defendants' disclosures because they occurred before CAC actually began to deteriorate.  (Opp'n 12.)  This argument makes no sense.  If Teladoc believed that CAC may deteriorate during 2H23, warned of that very risk, and expressly included that prediction in guidance, then Plaintiffs were not defrauded.  Full stop.  Plaintiffs cannot now construct a fraud claim by ignoring Teladoc's actual disclosures and stripping the context from allegedly false snippets of Defendants' public statements.

Tellingly, Plaintiffs simultaneously ask the Court to ignore Defendants' warnings, casting this argument as a "truth-on-the-market defense."  (Opp'n 12.)  But as the Second Circuit has explained, "the relevance of [a company's] disclosures" is "not to show that plaintiffs *knew* the truth" "but rather to undercut the inference that [the company] was attempting to conceal that truth." *City of Pontiac Policemen's & Firemen's Ret. Sys.* v. *UBS AG*, 752 F.3d 173, 186 n.62 (2d

Cir. 2014); *see N.Y.C. Pub. Pension Funds* v. *Coupang, Inc.*, 2025 WL 2613650, at *16 (S.D.N.Y. Sept. 10, 2025) (rejecting falsity allegations at pleading stage based on risk disclosures).

For this reason alone, Plaintiffs' falsity arguments should be rejected. As explained below, Plaintiffs' arguments also ignore the law and rest on absurd inferences and inaccurate quotations.

## A.    July 2023 Statements

Plaintiffs argue that all three July Statements misleadingly concealed a material increase in CAC. But the Complaint contains *no facts* demonstrating that CAC had increased by July 25, 2023, much less materially so. (Br. 11.) Plaintiffs' entire argument hinges on Murthy's so-called "admission," in February 2024, that the Company "started observing" lower than expected ad spend yield "in the back half" of 2023. (Opp'n 3, 11.) Plaintiffs argue the Court "must…credit" their "interpretation" that this means a "material increase in CAC" "indisputably began on July 1, 2023." (Opp'n 10-11.) But Plaintiffs' "interpretation" is not what Murthy said. Murthy did not describe observations on "the first day" or "the beginning" of 2H23 or even "July 2023." She simply referenced, extemporaneously, an unquantified increase that "*started*" at some *unspecified point* in the "*back half*" of the year—a six-month period. This is nearly identical to the situation in *In re Riskified Securities Litigation*, 2023 WL 3791653, at *8 & n.7 (S.D.N.Y. June 2, 2023), where Judge Cote rejected the argument that a CFO's statement during a November earnings call that the company added "several new large merchants" that changed its "risk profile" in 3Q meant that the risk profile had changed "at the time of the IPO [on] July [28]." *See also Brody* v. *Homestore, Inc.*, 2003 WL 22127108, at *5 (C.D. Cal. Aug. 8, 2003) (timing allegations must "meet the Rule 9(b) particularity requirements").[1]

---

[1] Plaintiffs' cases do not support their absurd interpretation of Murthy's statement. In *Lapin* v. *Goldman Sachs Group Inc.*, 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006), this Court faulted defendants for "misconstru[ing]" plaintiffs' allegations—not the case here. And *In re MBIA, Inc. Securities Litigation*, 700 F. Supp. 2d 566, 580-

2

But even crediting Plaintiffs' argument, the July Statements still are not misleading:

**Statement 1**:  Plaintiffs repeatedly mischaracterize this statement as conveying "that CAC was 'stable,'" (Opp'n 2, 7, 8, 11), while omitting the rest of the statement: "*through the first half of the year*." (Br. 11-13.)  Plaintiffs do not dispute that this historical statement was *true*.  They argue that it somehow "gave a false impression" by not disclosing a material increase in CAC starting on July 1, 2023.  (Opp'n 10-11.)  But the law is well settled that "[d]isclosure of accurate historical data does not become misleading even if less favorable results might be predictable by the company in the future." *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 395 (S.D.N.Y. 2006); (Br. 11-12).[2]  Plaintiffs do not dispute this legal principle, but attempt to distinguish Defendants' overwhelming case law support because analysts covering Teladoc were purportedly misled.  (Opp'n 11 n.3.)  Not so:  the cited analyst reports from July merely reported on Teladoc's recently-closed *2Q23* results, and do not support that the alleged misstatements confused analysts about future results for 3Q23.  (Br. 13 n.6; Exs. 27, 28.)  Regardless, what matters is what Defendants actually said.  Courts reject attempts "to reverse-engineer a non-actionable statement into an actionable misstatement based on the securities analysts' interpretation or reaction," particularly where, as here, it is not clear "how the analysts…were selected," whether they represent "a broader market understanding," and where "the statements at issue are clear on their face." *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp. 3d 498, 521 (S.D.N.Y. 2020).

---

81 (S.D.N.Y. 2010), involved a question of fact as to a term's meaning because the defendants' argument contradicted their earlier public statements—also not the case here.

[2]  Plaintiffs argue that Defendants were required to "disclose" rising CAC in July because they spoke on "the topic." (Opp'n 10.)  Judge Broderick rejected an identical argument in *Coupang* where, as here, the issuer "sufficiently disclosed the purported risks." 2025 WL 2613650, at *16.  Plaintiffs' cited cases (Opp'n 11) are irrelevant because none addressed accurate historical statements, except this Court's opinion in *Nokia*, which dismissed the complaint.  (Br. 11-12.)

3

**Statement 2**:  Plaintiffs badly mischaracterize this statement.  They argue that Murthy told investors the "cadence of ad spending" was "balanced" in *July*, and that the statement was not a comparison between "FY23 ad spending…compared to FY22."  (Opp'n 13.)  *Wrong*.  The full statement, which Plaintiffs omit, was:  "[T]his year [2023], the cadence of ad spending is more balanced across the first three quarters of the year in contrast to the steep ramp over the same period last year [2022]."  (Br. 14.)  This is simply true:  ad spending *was more balanced* across the first three quarters of 2023 than in 2022.  (*Id.*)  Plaintiffs' strained argument about "mathematical proof of materially increased CAC" (Opp'n 13) is irrelevant because the statement was clear and not misleading.

**Statement 3**:  Plaintiffs argue that Teladoc's disclosure of "no material changes to the risk factors previously disclosed" was misleading because "Defendants knew by July 1, 2023" that the risk of rising CAC "had already materialized."  (Opp'n 13.)  But, as Plaintiffs admit, Defendants had repeatedly disclosed anticipated CAC deterioration for 2H23, *supra* 1, and, in any event, nowhere do Plaintiffs say what actually "materialized" between July 1 and 28.[3]

### B.   October 2023 Statements

The October Statements were made during the call reporting on 3Q23.  Murthy disclosed "modest deterioration in [CAC]" which was "likely to persist" such that BetterHelp would meet the "lower half" of its revenue guidance for 2023.  (Br. 15.)  Plaintiffs argue that every October Statement is false because the CAC deterioration was some unspecified amount more than "modest."  (Opp'n 15.)  But, like the July Statements, Defendants were reporting on the *prior* quarter (not the 24 days since 3Q23 had closed), and, in any event, Plaintiffs plead *no facts* about CAC deterioration between October 1 and 24, including the amount of deterioration, whether it

---

[3]   Plaintiffs' arguments regarding Statement 7 fail for the same reasons.

was material, how it compared to expectations, and why "modest" was insufficient. Indeed, Plaintiffs do not dispute that BetterHelp *met the lower half of its FY23 revenue guidance*— meaning CAC deterioration was in the estimated range. Plaintiffs' failure to plead facts contradicting the challenged statements "*at the time [they were] made*" is fatal; "without *contemporaneous* falsity, there can be no fraud." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014).[4] Additionally:

**Statement 4**: Plaintiffs plead no facts showing that CAC was not "near the midpoint" of an unspecified "outlook range" in 3Q23. *Supra* 4-5; (Br. 15.) Plaintiffs again rely on analyst reactions to bolster their theory (Opp'n 15), but the cited analysts simply reported that CAC in 3Q23 was slightly "below expectations," meaning BetterHelp revenues were "likely to come in closer to the lower half of the guidance range" (*see* ¶¶ 146-47)—precisely what Murthy reported and precisely what happened in 2H23.

**Statement 5**: Plaintiffs badly misrepresent the challenged statement, arguing that it is *not* "one of past performance." (Opp'n 16.) Statement 5 plainly reported "[t]hird quarter BetterHelp adjusted EBITDA was $26 million, resulting in a margin of 9.1%"—past results Plaintiffs do not dispute. (Br. 16.) Plaintiffs also argue that the statement was *not* a comparison between the relatively balanced advertising environment in 2023 compared to 2022 (Opp'n 15), despite the statement unambiguously attributing 3Q financial results to "more stable" ad spending in 2023 "compared to FY22." (Br. 16.) The statement's plain meaning is clear, and the Court should not credit Plaintiffs' attempts to rewrite it.

---

[4]  Plaintiffs argue that Murthy downplayed that CAC could worsen. (Opp'n 15.) What Murthy actually said, however, was that deterioration "in this range" was "reflected in the [downward] revision of the *high end* of…revenue guidance," (Ex. 23, at 7), meaning that the *lower end* of the guidance anticipated further decline.

**Statement 6**:   Plaintiffs claim Gorevic's opinion that Teladoc's "scale" was a "real advantage" was misleading because he later "admitted" that "BetterHelp's scale was driving lower returns…compared to any 'single competitor.'"  (Opp'n 14, 16.)  Yet again, that is not what Gorevic said.  For this supposed admission, Plaintiffs cite ¶ 160, which quotes Gorevic explaining in February 2024 that increasing advertising "rates" were not due to "a single competitor," but rather reflected "a lot of advertisers in general going after a similar population."  Gorevic did not "admit" that Teladoc's scale drove lower returns, as Plaintiffs incorrectly say.

Plaintiffs also concede that this statement was an opinion and do not argue that the statement was "subjectively false, as required…to be actionable." *Coupang*, 2025 WL 2613650, at *14.[5]  Plaintiffs rely on *In re Signet Jewelers Limited Securities Litigation*, 2018 WL 6167889, at *11–12 (S.D.N.Y. Nov. 26, 2018) to argue the statement is not puffery, but statements there became material only when *repeated* to quell investors' concerns.  That is not the case here.

### C.    November 2023 and January 2024 Statements

**Statement 8**:  At an industry conference in November 2023, Gorevic reiterated that the "bottom end of the [2023] guidance range means CAC stays…a little bit worse than our expectations for the year[, a]nd that's where it's been." (Br. 17.)  Plaintiffs plead no contrary facts, and the fact that BetterHelp *met the bottom end of its 2023 guidance range* supports that this disclosure was accurate when made.  Plaintiffs ignore the statement itself and argue that BetterHelp missed its 4Q23 revenue guidance, "a fact that was unknown to investors in November 2023." (Opp'n 17.)   But Gorevic's statement expressly concerns 2023 guidance (not Q4), and the

---

[5]   *Abramson* v. *Newlink Genetics Corp.* did not hold that "whether statements are fact or opinion is insignificant." (Opp'n 16.)  It endorsed the Supreme Court's heightened pleading standard for opinions, 965 F.3d 165, 175-76 (2d Cir. 2020), which is not met here.  (Br. 16-17.)

Complaint does not plead that the ultimate slight revenue miss for 4Q23 was known by Gorevic in November, with more than one month remaining in the quarter.

Plaintiffs also argue that an analyst who attended the conference "modeled BetterHelp CAC approximately flat for 2023, 2024, and 2025." (Opp'n 17.)  That particular assumption by a single analyst says nothing about whether Gorevic's statement was false.

**Statement 9**:  Plaintiffs concede that Statement 9—that BetterHelp "always pull[s] back on ad spend [in 4Q]"—was true.  They challenge the supposed "message behind Statement 9," which, in their view, was that "planned seasonality was…intact, when, in reality…revenue and paying user growth had materially declined." (Opp'n 17.)  But BetterHelp's planned seasonality *was* intact—Teladoc decreased ad spend in 4Q23, as it does every 4Q.  (Br. 17-18.)  Plaintiffs conflate the 4Q pull-back in spending with a different metric, "user growth," and, in any event, the Complaint pleads no facts about user growth as of November 2023.

**Statement 10**:  Plaintiffs concede that Gorevic's opinion that BetterHelp would not "shrink next year"—meaning 2024—was consistent with the 2024 BetterHelp revenue guidance provided six weeks later.  (Br. 18.)  Nor do Plaintiffs dispute the statement *was an opinion* or argue that it was subjectively disbelieved.  These failures are dispositive.  Plaintiffs attempt to confuse the issue by citing "flat" profit guidance for FY24; negative revenue growth guidance for 1Q24; and a "negative impact on growth rates" during 1H24.  (Opp. 18.)  None of these metrics contradict Gorevic's opinion that BetterHelp would not "shrink" in FY24.

Plaintiffs point to a single analyst's reaction to "buttress" their argument.  (Opp'n 18.)  Again, Plaintiffs misconstrue the cited report, which expressed "surprise" not at BetterHelp 2024 guidance, but rather "the 2024 and L[ong] T[erm] outlook" for "Integrated Care"—an unrelated

7

business segment. (Ex. 34 at 1.)[6] Besides, a single analyst's reaction to an unambiguous statement is irrelevant. *Supra* 3.

Finally, Plaintiffs insist Gorevic's statement was "present-oriented, not forward-looking," and therefore not subject to the PSLRA safe harbor. Statement 10 was plainly about BetterHelp's prospects "next year," and thus subject to the safe harbor. (Br. 18.) Plaintiffs' argument that the accompanying cautionary language was "never publicly disseminated to investors through an SEC filing" is, again, wrong. The "PowerPoint slides" at issue (Opp'n 18-19) expressly incorporated the robust risk factors from Teladoc's earlier SEC filings. (Ex. 25 at 2.)

## II.     The Complaint Fails to Plead Scienter

Plaintiffs acknowledge that scienter must be assessed by a "holistic" weighing of competing inferences. (Opp'n 19.) But their inferences are neither cogent nor compelling. Plaintiffs *concede* that Defendants had no motive to commit fraud. (*Id.*) They *concede* that Murthy *increased* her shareholdings, which raises a contrary inference. (Br. 19-20.) They *concede* Defendants warned of CAC deterioration before the Class Period, promptly disclosed CAC deterioration during the 3Q23 and 4Q23 earnings calls, and even lowered Teladoc's company-wide FY revenue guidance in October due to recent deterioration. (*Id.* 20-21.) They *concede* that the Complaint identifies *no* internal reports, documents, communications, or witness statements demonstrating what contradictory information Gorevic or Murthy possessed or when. (*Id.* 21-22.) And Plaintiffs' narrative (Opp'n 24-25) fails to explain *why*:  why would Defendants mislead investors about BetterHelp's CAC deterioration, with no financial motive whatsoever, while simultaneously warning investors about, and then promptly disclosing, CAC deterioration, only to

---

[6]    *In re Ply Gem Holdings, Inc.*, 2016 WL 5339541, at *4 (S.D.N.Y. Sept. 23, 2016) cited an analyst's reaction to show "qualitative[] material[ity]," not falsity.

suddenly "admit" to this senseless fraud during an earnings call?  The Court should not credit Plaintiffs' incoherent theory.  (Br. 26.)

Plaintiffs' scienter argument largely relies on their assertion that Defendants "admittedly knew CACs increased by July 1, 2023,"  based on Murthy's statement that Teladoc "started observing" ad spend yield "below target" in "the back half of the year."  (Opp'n 20.)  As discussed *supra* 2, this statement does not support the inference that CAC materially increased on July 1, 2023, much less plead what the Individual Defendants "knew."[7]  Plaintiffs similarly point to Defendants' statements during earnings calls that "we…look at" optimization across ad channels "hourly and daily," and that "we're constantly looking at the marginal return" on ad spend, and insist this means that the CEO and CFO *personally* monitored CAC in real time.  (Opp'n 20-22.) But, again, the Complaint pleads no facts identifying what any Individual Defendant knew on any given date, and, in any event, the more compelling inference is that Murthy and Gorevic were speaking on behalf of Teladoc and its 5,600 employees, and *not* saying that the CEO and CFO *themselves* review a single metric of a single business "constantly" and "hourly and daily."  (Br. 22-24.)[8]

But even assuming that the CEO and CFO were aware of daily changes in CAC, Defendants' opening brief posed simple questions, and Plaintiffs' silence in opposition is deafening.  What was CAC on July 25?  On October 24?  When did it deteriorate?  Did it deteriorate

---

[7]  Plaintiffs rely on *Macovski* v. *Groupon, Inc.*, 553 F. Supp. 3d 460 (N.D. Ill. 2021), but that out-of-circuit opinion is inconsistent with *Riskified*, *supra* 2.  It is also inconsistent with this Court's opinion in *Nokia*, where defendants reported disappointing 1Q sales numbers on April 6, but this Court rejected as "unsubstantiated speculation" the inference that the CEO must have known those disappointing results when speaking on March 25—despite his "admitted access to" "ten weeks" of 1Q sales data at that time.  423 F. Supp. 2d at 406-07.

[8]  In *Stadium Capital LLC* v. *Co-Diagnostics, Inc.*, 2024 WL 456745, at *2, 5 (S.D.N.Y. Feb. 5, 2024), the CEO of a small company with fewer than 150 employees and a single product accounting for "more than 99% of the company's revenue" admitted that "we certainly saw the [fallout]" of a *75% revenue decline* "as the second quarter progressed."  *See also id.*, No. 22-cv-06978-AS (S.D.N.Y.), ECF No. 34-3 at 13.  No comparable allegations exist here.

in a manner inconsistent with Defendants' guidance or public statements?  By how much?  (Br. 23.)  Even crediting Plaintiffs' implausible inference that Gorevic and Murthy personally monitored BetterHelp CAC in real time daily, the Complaint never explains *what that data showed* or *how it contradicted any public statement*.  As this Court held in *Nokia*, a CEO's "admitted access to" key financial information cannot support scienter absent *particular facts* describing the information and how it contradicted his statements.  423 F. Supp. 2d at 406-07; (Br. 23-24).[9]  Those facts are absent here.

Plaintiffs' remaining circumstantial allegations do not move the needle.  They do not dispute that the FTC Order concerned conduct from 2013-2020.  They argue that Defendants were "ordered to cease conduct" pursuant to the Order (Opp'n 23), contradicting their own allegation that Teladoc "voluntarily stopped" the underlying conduct in 2021, years before the events here.  (Br. 24.)  Plaintiffs do not dispute that the "core operations" doctrine is disfavored and provides "supplemental support for scienter" at best.  (Br. 25-26; Opp'n 23.)  And though they argue that "BetterHelp was a core operation of Teladoc," that does not mean that every aspect of BetterHelp and associated financial metric is *also* a "core operation" such that knowledge can be assumed without any facts.  *See Glantz* v. *James River Grp. Holdings, Ltd.*, 2025 WL 278440, at *8 (S.D.N.Y. Jan. 23, 2025) (specific accounting practice within company's largest business segment not "sufficiently core" to presume knowledge).  Finally, Plaintiffs argue that Gorevic's departure was related to "BetterHelp underperformance" (Opp'n 24), but make no effort to tie the departure to the *alleged fraud* in this case, further undermining scienter (Br. 25).

---

[9]  Plaintiffs' attempt to distinguish Defendants' cases as lacking "admissions" (Opp'n 22 n.8) ignores this Court's rejection in *Nokia* of the same type of "admission" Plaintiffs rely on here.  And Plaintiffs' cases are distinguishable because they contained specific factual detail the Complaint lacks.  *E.g.*, *Plumbers & Pipefitters Nat'l Pension Fund* v. *Tableau Software, Inc.*, 2019 WL 2360942, at *6 (S.D.N.Y. Mar. 4, 2019) (CEO and CFO attended specific meetings where relevant issues were discussed).

### III.    The Complaint Fails to Plead Loss Causation

Plaintiffs argue that the October 2023 disclosure of 3Q23 results satisfies loss causation because it concerned "CAC," which was the "subject" of the misrepresentations.  (Opp'n 25.) Only one July Statement concerned CAC, which explicitly discussed CAC "through the first half of the year," making disclosure of modest deterioration in 3Q23 irrelevant.  *Supra* 3.  Plaintiffs cite one analyst's supposed "surpris[e]" about a decline in "paying users" (Opp'n 26)—a topic never discussed in the July Statements—making this analyst irrelevant.

Plaintiffs argue that the February 2024 disclosure of 4Q23 results satisfies loss causation by quoting analysts who reported elevated CACs, particularly "in social media." (Opp'n 27.)  But the analysts merely reported what Defendants said—they did not suggest Defendants' disclosures were inconsistent with earlier statements or prior guidance.  To the contrary, the analysts discussed "*continued* elevation of CACs" and "*persistent* elevated CAC" in 4Q23.  (Opp'n 27.)  This makes sense:  Defendants repeatedly disclosed CAC deterioration that was "likely to persist" at the low end of BetterHelp's 2023 revenue guidance, which is precisely what the February 2024 disclosure announced.  (Br. 27-28.)  The materialization of a disclosed risk does not plead loss causation, and Plaintiffs cannot avoid those cases by incorrectly arguing that Defendants are pursuing a "truth-on-the-market defense" (Opp'n 28), as Defendants' cases show.  (Br. 27-28.)

### CONCLUSION

Defendants respectfully submit that the Complaint should be dismissed with prejudice.

11

Dated: September 17, 2025
New York, New York

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: */s/ Audra J. Soloway*
Daniel J. Kramer
Audra J. Soloway
Daniel Sinnreich
Emily Miller
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
dkramer@paulweiss.com
asoloway@paulweiss.com
dsinnreich@paulweiss.com
emiller@paulweiss.com

*Attorneys for Teladoc Health, Inc., Jason
Gorevic, and Mala Murthy*

12

**Electronic Word Count Certification**

Pursuant to 7.1(c) of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York and II.B. of Judge Kenneth M. Karas's Individual Rules of Practice, I certify that this brief complies with that rule because it contains 3,495 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and required certificates according to Microsoft Word's "Word Count" feature.

Dated: September 17, 2025                                Respectfully submitted,
New York, New York

                                                        PAUL, WEISS, RIFKIND, WHARTON &
                                                        GARRISON LLP

                                                        By: */s/ Audra J. Soloway*
                                                        Daniel J. Kramer
                                                        Audra J. Soloway
                                                        Daniel Sinnreich
                                                        Emily Miller
                                                        1285 Avenue of the Americas
                                                        New York, NY  10019-6064
                                                        Phone:  (212) 373-3000
                                                        dkramer@paulweiss.com
                                                        asoloway@paulweiss.com
                                                        dsinnreich@paulweiss.com
                                                        emiller@paulweiss.com

                                                        *Attorneys for Teladoc Health, Inc., Jason
                                                        Gorevic, and Mala Murthy*

13